Wayne A. Mack (Pro Hac Vice)
C. Mitchell Goldman (Pro Hac Vice)
DUANE MORRIS LLP
30 South 17th Street
Philadelphia, PA  19103-4196
Telephone:  (215) 979-1152
Facsimile:  (215) 689-3595
E-mail:  wamack@duanemorris.com
E-mail:  cmcgoldman@duanemorris.com

Cyndie M. Chang (SBN 227542)
Audra L. Thompson (SBN 218479)
DUANE MORRIS LLP
865 S. Figueroa St., Suite 3100
Los Angeles, CA 90017-5450
Telephone: (213) 689-7400
Facsimile: (213) 689-7401
E-mail:  cmchang@duanemorris.com
E-mail:  athompson@duanemorris.com
Attorneys for Plaintiff Signature MD, Inc.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SIGNATURE MD, INC., | Case No.:  2:14-cv-5453 |
| Plaintiffs, | **MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT MDVIP, INC.'S MOTION TO DISQUALIFY PLAINTIFF'S COUNSEL** |
| v. | |
| MDVIP, INC., | |
| Defendants. | Date:        October 10, 2014 |
| | Time:       9:30 A.M. |
| | Dept.:       Courtroom 7 |

## Table of Contents

**Page**

INTRODUCTION ........................................................................................................ 1

FACTUAL BACKGROUND ........................................................................................ 2

   I.    MDVIP's anticompetitive conduct gives rise to SignatureMD's
        claims in this case ............................................................................. 2

   II.   Duane Morris previously represented MDVIP in an unrelated case
        alleging violations of HIPAA ........................................................... 3

   III.  Duane Morris's representation of SignatureMD in this case ............ 7

LEGAL STANDARD .................................................................................................. 9

ARGUMENT ............................................................................................................. 11

   I.    Disqualification is inappropriate because this case is not substantially
        related to *Lehigh Valley*. .............................................................. 11

   II.   Duane Morris has imposed an ethical screen, eliminating the risk that
        MDVIP's client confidences will be compromised. ...................... 18

CONCLUSION ......................................................................................................... 21

**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT MDVIP, INC.'S
MOTION TO DISQUALIFY PLAINTIFF'S COUNSEL**

…

## Table of Authorities

**Cases**

Page(s)

*Abbott v. United States IRS*
   399 F.3d 1083 (9th Cir. 2005) ........................................................................ 12

*Adriana Int'l Corp. v. Lewis & Co.*
   913 F.2d 1406 (9th Cir. 1990) .......................................................................... 9

*Chambers v. Superior Court*
   121 Cal. App. 3d 893 (Cal. App. 3d Dist. 1981) ........................................... 10

*Fabric Selection, Inc. v. Wal-Mart Stores, Inc.*
   2009 U.S. Dist. LEXIS 111329 (C.D. Cal. Nov. 17, 2009) .................... 11, 12

*Farris v. Fireman's Fund Ins. Co.*
   119 Cal. App. 4th 671 (Cal. App. 5th Dist. 2004) ............................. 10, 17-18

*Faughn v. Perez*
   145 Cal. App. 4th 592 (Cal. App. 5th Dist. 2006) ............................. 10, 16-17

*Fremont Indemnity Co. v. Fremont General Corp.*
   143 Cal. App. 4th 58 (Cal. App. 2d Dist. 2006) ............................................ 17

*H.F. Ahmanson & Co. v. Salomon Brothers, Inc.*
   229 Cal. App. 3d 1445 (Cal. App. 2d Dist. 1991) ........................ 9, 11-12, 14

*Hartford Cas. Ins. Co. v. Am. Dairy & Food Consul. Labs.*
   2010 U.S. Dist. LEXIS 101277 (E.D. Cal. Sept. 27, 2010) .......................... 16

*Hewlett-Packard Co. v. Nu-Kote Int'l, Inc.*
   1995 U.S. Dist. LEXIS 22615 (N.D. Cal. March 8, 1995) ........................... 13

*Hillis Adjustment Agency, Inc. v. Graham Co.*
   911 A.2d 1008 (Pa. Super. 2006) ................................................................... 14

*In re County of Los Angeles*
   223 F.3d 990 (9th Cir. 2000) .......................................................................... 10

*In re Marriage of Zimmerman*
   16 Cal. App. 4th 556 (Cal. App. 1st Dist. 1993) ........................................... 16

*IPVX Patent Holdings, Inc. v. 8x8, Inc.*
   2013 U.S. Dist. LEXIS 178858 (N.D. Cal. Dec. 19, 2013) .......................... 12

*Kelly v. Roker*
   2012 U.S. Dist. LEXIS 33604 (N.D. Cal. March 13, 2012) ........................... 9

*Kirk v. First American Title Insurance Co.*
   183 Cal. App. 4th 776 (Cal. App. 2d Dist. 2010) ............................... 10, 18-21

*Marvel v. Universal Bank, N.A.*
  251 B.R. 869 (N.D. Cal. 2000)........................................................................9

*Openwave Sys. v. Myriad France, S.A.S.*
  2011 U.S. Dist. LEXIS 35526 (N.D. Cal. March 31, 2011) ........................19

*Optyl Eyewear Fashion Int'l Corp. v. Style Cos.*
  760 F.2d 1045 (9th Cir. 1985) .......................................................................9

*Rhaburn v. Superior Court*
  140 Cal. App. 4th 1566 (Cal. App. 4th Dist. 2006) ......................................19

*Synergy Tech & Design, Inc. v. Terry*
  2007 U.S. Dist. LEXIS 34463 (N.D. Cal. May 2, 2007) ...............................9

*Synthes, Inc. v. Emerge Medical, Inc.*
  2014 U.S. Dist. LEXIS 78218 (E.D. Pa. June 5, 2014) ...............................14

*Wingnut Films, Ltd. v. Katja Motion Pictures Corp.*
  2007 U.S. Dist. LEXIS 96132 (C.D. Cal. Jan. 17, 2007).......................13, 17

**Other Authorities**

Health Insurance Portability and Accountability Act, P.L. 104-191,
  110 Stat. 2033 ("HIPAA") ........................................................................3-4

California Rule of Professional Conduct 3-310(E) .................................................10

Central District of California Local Rule 83-3.1.2 ................................................10

Restatement (Third) of the Law Governing Lawyers § 132....................................10

3-13 Hooper Lundy & Bookman, *Treatise on Health Care Law* § 13.01[1][b][ii]
  (Matthew Bender, Rev. Ed.)...........................................................................4

**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT MDVIP, INC.'S MOTION TO DISQUALIFY PLAINTIFF'S COUNSEL**

# **INTRODUCTION**

MDVIP seeks to deprive SignatureMD its choice of its long-standing counsel, Duane Morris, to represent it in this matter because Duane Morris previously represented MDVIP in an unrelated matter that was actively litigated for three months in 2010.  California law does not require such a result.

MDVIP cannot prove, as it must, that the prior case in which Duane Morris represented MDVIP bears a substantial relationship to this antitrust case in which SignatureMD claims that MDVIP monopolized markets and illegally restrained competition by entering into exclusive contracts with participating physicians.  The prior case did not involve antitrust claims, SignatureMD, any of MDVIP's competitors, the geographic markets MDVIP is alleged to have monopolized, or any factual and legal issues relating to the provisions in MDVIP's contracts with participating physicians, including the post-termination non-compete clauses at issue here.  Instead, it involved a claim that MDVIP allegedly misappropriated trade secrets when it obtained certain patient records from a single physician in Allentown, Pennsylvania.

The previous matter was wholly unrelated to this case.  It was also short-lived, and Duane Morris has not represented MDVIP for several years.  The Duane Morris lawyers who worked on the prior case for MDVIP do not possess any confidential information relevant to this case.  Further, out of an abundance of caution, Duane Morris has established a timely and thorough ethical screen.  The lawyers who worked on the prior MDVIP matter have had and will have no involvement in this case.  This Court should deny MDVIP's motion.

///

///

///

///

///

**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT MDVIP, INC.'S MOTION TO DISQUALIFY PLAINTIFF'S COUNSEL**

# FACTUAL BACKGROUND

## I. MDVIP's anticompetitive conduct gives rise to SignatureMD's claims in this case

This case arises from MDVIP's abuse of its dominance in markets across the United States for concierge medicine services for physicians.  Concierge medicine is a form of medical practice under which physicians offer their patients greater availability, longer appointments, and more personalized medical care, including annual physicals or wellness exams, in exchange for the payment of a monthly or annual fee.  (Compl. ¶ 3, ECF No. 1).

MDVIP provides services to member physicians to assist their transition to a concierge model and facilitate their management of a concierge practice.  (*Id.* ¶ 4).  Patients pay a fee of $1,500 to $1,800 to join MDVIP's program and to receive enhanced services from affiliated physicians.  (*Id.* ¶ 5).  MDVIP has a market share of over 70% across the United States, and a market share of 65%-100% in at least 16 major cities in the United States.  (*Id.* ¶ 65).  Plaintiff SignatureMD competes with MDVIP by offering its own turn-key program for physicians to facilitate concierge medicine practices. (*Id.* ¶ 9).

SignatureMD alleges that anticompetitive tactics by MDVIP violate Sections 1 and 2 of the Sherman Antitrust Act and California antitrust and unfair competition statutes.  SignatureMD alleges that MDVIP requires its physicians to sign a Participation Agreement with severely restrictive terms:

- Physicians must limit their practices to no more than 600 MDVIP member patients and to terminate all other patients in their practices. (*Id.* ¶ 6).
- Physicians must agree to lengthy and unduly restrictive exclusive dealing agreements that prohibit them from speaking with or contracting with any of MDVIP's competitors not only during the term of their agreement with MDVIP but also for two years after.  (*Id.* ¶ 12).

- In some markets, MDVIP's contracts include a punitive $1 million "liquidated damages" clause for termination, which functions as a non-compete provision. (Id. ¶ 82).

These provisions lock affiliated physicians into MDVIP's network for the remainder of their careers in private practice by not only preventing them from maintaining a concierge practice after leaving MDVIP, but also from re-establishing a traditional practice. (*Id.* ¶ 84). MDVIP's Participation Agreement forces newly affiliated physicians to terminate most of their existing patients and leaves them with a patient base that is no longer viable as a traditional practice. This makes it nearly impossible for a physician to leave MDVIP at all. (*Id.* ¶ 84).

MDVIP also employs other anticompetitive tactics including:

- MDVIP insists that non-physician conversion specialists who assist in transitioning patients to an affiliated physician's new concierge practice (known as "patient advocates") sign employment agreements including two year non-compete provisions, even though MDVIP frequently hires patient advocates on a temporary basis for only one or a few engagements. (*Id.* ¶¶ 96-97).
- MDVIP files baseless lawsuits against competitors to prevent them from entering or to force them out of the market. (*Id.* ¶¶ 97-107).

Thus, the central issues in this case are MDVIP's monopoly power, the non-compete provisions in MDVIP's Participation Agreements and employment agreements, and the sham litigation that MDVIP files against its competitors.

## II. Duane Morris previously represented MDVIP in an unrelated case alleging violations of HIPAA

Duane Morris previously defended MDVIP in a case in the Eastern District of Pennsylvania in which the plaintiff, a group medical practice, alleged that one of its physicians violated rules promulgated under the Health Insurance Portability and Accountability Act, P.L. 104-191, 110 Stat. 2033 ("HIPAA") by providing his patient list to MDVIP. *Lehigh Valley Physicians Group v. MDVIP, Inc.*, No. 5:10-cv-05413

(E.D. Pa.) ("*Lehigh Valley*").[1]  HIPAA imposed broad changes in delivery and administration of healthcare.  Among other things, it directed the Department of Health and Human Services to promulgate rules regulating private medical information.  The HHS Privacy Rule was eventually published in 2002 at 45 C.F.R. Subparts 160 and 164.  *See* 3-13 Hooper Lundy & Bookman, *Treatise on Health Care Law* § 13.01[1][b][ii] (Matthew Bender, Rev. Ed.).  HHS has since published various other rules governing privacy and security of medical information.  *Id.*

The *Lehigh Valley* case was open for just under two years, but was actively litigated for only about three months in 2010.  It was not an antitrust case and it implicated in no way the key issues in this litigation.  It concerned the actions of a single physician in Allentown, Pennsylvania, a city approximately 50 miles north of Philadelphia that is not one of the geographic markets at issue in this case.

*Lehigh Valley* was filed by the Lehigh Valley Physician's Group ("LVPG"), a medical practice and subsidiary of Lehigh Valley Health Network, which operates two hospitals and provides medical services in the Allentown, Pennsylvania region. (*Lehigh Valley* Compl. ¶¶ 6-7, (SignatureMD's Request for Judicial Notice ("RJN") Ex. 2 at 15).)  Mark Kender, an internist employed by LVPG, was interested in joining MDVIP's network and provided MDVIP with a list of his patients.  LVPG alleged that "MDVIP wrongfully received and utilized" a list of Dr. Kender's patients in violation of HIPAA.  (*Id.* ¶¶ 2, 35-42 (RJN Ex. 2 at 14, 20-21).)  LVPG further alleged that MDVIP violated HIPAA by conducting a telephone survey of certain patients on the list.  (*Id.* ¶¶ 44-48 (RJN Ex. 2 at 21-22).)

LVPG's factual allegations were based on Dr. Kender's and MDVIP's alleged violations of HIPAA.  Because it lacked standing to sue under HIPAA, LVPG asserted claims for misappropriation of trade secrets and tortious interference with

---

[1] This summary of the *Lehigh Valley* litigation is based entirely on publicly filed pleadings.

contractual relations.   (*Id.* ¶¶ 78-90 (RJN Ex. 2 at 28-31); Def. Mem. Law in Opp. to Pl.'s Mot. for Temp. Restraining Order and/or Prelim. Injunctive Relief at 2, 7 (RJN Ex. 4 ar 125, 130).)  The only "trade secret" at issue was Dr. Kender's patient list, and LVPG did not claim that MDVIP used the list other than to identify participants for a survey.  The only specific harm that LVPG identified was its potential exposure to liability under HIPAA.

LVPG alleged that the patient list constituted protected information under HIPAA and that MDVIP's conduct was "in direct violation of the HIPAA privacy rule." (*Lehigh Valley* Compl. ¶¶ 36-40, 54-55 (RJN Ex. 2 at 20-21, 23).)  Much of the Complaint consisted of allegations regarding MDVIP's obligations under HIPAA. (*Id.* ¶ 57-77 (RJN Ex. 2 at 24-27).)

LVPG did not allege any impropriety in MDVIP's recruiting practices generally, nor was any part of MDVIP's physician Participation Agreement, including the post-termination non-compete clause, at issue.  Indeed, although Dr. Kender did sign the Participation Agreement, he did not perform under it, and it appears undisputed from the pleadings that Dr. Kender never practiced as an MDVIP affiliated physician.  (Counterclaim ¶ 10 (RJN Ex. 7 at 266).)

LVPG's subsequent prosecution of the *Lehigh Valley* case confirmed that the case was based on an alleged HIPAA violation involving 246 patients:

- **LVPG's Motion for Injunctive Relief**: On October 14, 2010, LVPG filed with its complaint a motion for a temporary restraining order or preliminary injunction.  LVPG's motion sought an order requiring MDVIP to identify those patients it had surveyed, so that LVPG could notify them of an information breach under HIPAA.  (Mot. for Temp. Restraining Order and/or Prelim. Injunctive Relief, at Ex. 3 (Proposed Order) (RJN Ex. 3 at 120-21).)  LVPG devoted 10 pages of its 12 page supporting argument to explaining its obligations and potential liability under HIPAA. (Mot. for Temp. Restraining Order and/or Prelim. Injunctive Relief at Ex. 2, 10-19 (RJN Ex. 3 at 109-118).)

- **Discovery**.  The parties engaged in limited expedited discovery during October and November 2010.
  - LVPG's requests for production of documents focused primarily on documents related to Dr. Kender and LVPG patients. (Pl. Mot. to Compel Full and Complete Resp. to Interrogatory #7 and Doc. Request #3 and for Protective Order at Ex. A (RJN Ex. 5 at 195-200).)
  - Only a single incomplete deposition was taken because of LVPG's intransigence.  (Pl. Mot. to Voluntarily Dismiss, Without Prejudice, All Pl. Claims Under Fed. R. Civ. P. 41(a)(2), Ex. 1 at 3 (RJN Ex. 8 at 341); Def. Resp. to Pl. Mot. to Voluntarily Dismiss, Without Prejudice, All Pl. Claims Under Fed. R. Civ. P. 41(a)(2) and Cross-Motion to Dismiss Pl. Claims With Prejudice at 6-7 (RJN Ex. 9 at 358-59).)
  - There was no hearing on LVPG's motion for injunctive relief. (*Lehigh Valley* Docket No. 31 (RJN Ex. 1 at 7).)
- **LVPG's offer to dismiss the case.**  On November 11, 2010, less than a month after the case was filed, LVPG offered to dismiss the litigation "once MDVIP identifies to [LVPG] each of the 246 patients who participated in the survey."  (Def. Mot. for Protective Order at Ex. A (RJN Ex. 6 at 237).)
- **LVPG provides notification under HIPAA.**  On December 2, 2010, LVPG elected to provide notice of a HIPAA data breach to all the patients on Dr. Kender's patient list.  (Opp. to Mot. to Dismiss Without Prejudice at 7 (RJN Ex. 9 at 359).)
- **LVPG moves to dismiss without prejudice.** On December 6, 2010, less than two months after the case was filed, believing that it had satisfied its HIPAA reporting obligations, LVPG filed a motion to dismiss without prejudice.  (Pl. Mot. for Voluntary Dismissal of All Claims Without Prejudice Under Fed. R. Civ. P. 42(a)(2) (RJN Ex. 8).)  MDVIP agreed

6

that the case should be dismissed but took the position that dismissal should be with prejudice and filed its own motion to dismiss on December 20, 2012.  (Opp. to Mot. to Dismiss Without Prejudice (RJN Ex. 9).)

- **Case is placed in suspense**.  On January 26, 2011, the Court placed *Lehigh Valley* in civil suspense.  (*Lehigh Valley* Docket No. 36 (RJN Ex. 1 at 7).)
- **Dismissal**.  On August 28, 2012, the court entered an order dismissing all claims with prejudice, following limited briefing regarding whether dismissal should be with or without prejudice.  LVPG "oppose[d] dismissal with prejudice based on a . . . concern that it may face exposure to future lawsuits from patients whose [Personal Health Information] MDVIP illegally obtained through Dr. Kender."  (Pl. Resp. to Order to Show Cause at 2 (RJN Ex. 10 at 482).)

*Lehigh Valley* was actively litigated for only about three months in 2010 before it was placed in civil suspense.  There was very minimal activity in the matter after 2010.  Duane Morris billed only 13.1 hours in January 2011; 0.4 hours in February 2011; and 0.6 hours in March 2011.  (Declaration of Roy R. Harris, Jr. in Support of Motion to Disqualify ("Harris Decl.") at 122-25, 129, 135, ECF No. 27-2).  There was no further activity until August 2012, when Duane Morris billed 8.8 hours.  (*Id.* at 138-39).  Duane Morris's representation of MDVIP formally concluded in August of 2012.  (Declaration of Sarah M. Bricknell In Support of Plaintiff SignatureMD's Opposition to Defendant MDVIP, Inc.'s Motion to Disqualify Plaintiff's Counsel ("Bricknell Decl.") ¶ 7).

### III.   Duane Morris's representation of SignatureMD in this case

Duane Morris has a long history of representing SignatureMD.  Since 2011, Duane Morris has handled matters for SignatureMD (none of which involved MDVIP) involving trademark and intellectual property issues, contract disputes, and

general corporate matters.  Duane Morris is currently representing SignatureMD in a number of matters not related to this case.  (*Id.* ¶ 3).

SignatureMD retained Duane Morris to represent it in this litigation on or about June 16, 2014.  (*Id.* ¶ 4).  Before accepting the representation, Duane Morris ran a conflicts check as it does for all new cases.  (*Id.* ¶¶ 5-6).  The conflicts check revealed that Duane Morris had previously represented MDVIP.  As is its standard practice, this was reviewed by Duane Morris's conflicts counsel who concluded that the two cases are not substantially related and that Duane Morris's representation of SignatureMD in this case would not create a conflict of interest.  (*Id.* ¶ 6).

Nonetheless, out of an abundance of caution, Duane Morris established an ethical screen on June 18, 2014, well before this lawsuit was filed on July 14, 2014.  (*Id.* ¶ 8).  The ethical screen's robust protective measures include:

1) Prohibiting lawyers and staff subject to the screen from written or oral communication regarding any substantive or procedural issue regarding either case with lawyers and staff on the other side of the screen after ascertaining that no such communication had taken place;

2) Prohibiting lawyers and staff on one side of the screen from discussing with or obtaining materials from anyone at Duane Morris regarding the case from which they are screened;

3) Providing that the physical files associated with each case are conspicuously labeled to indicate that screened attorneys and staff are forbidden from accessing them;

4) Providing that the screened lawyers and staff are barred from accessing the electronic files for the case they are screened from.

(*Id.*).

After the Complaint was filed on July 14, 2014, MDVIP's counsel contacted Duane Morris by letter dated July 22, 2014 and claimed that Duane Morris's representation of MDVIP in *Lehigh Valley* disqualified it from representing

SignatureMD in this case.  (Decl. of Jerome W. Hoffman In Support of Mot. to Disqualify ("Hoffman Decl.") ¶ 2 and Ex. A, ECF No. 27-1).  Duane Morris has no disqualifying conflict because *Lehigh Valley* is not related to this case.  Duane Morris's Associate General Counsel sent a letter to MDVIP's counsel on July 28, 2014, explaining that.  The letter also notified MDVIP that out of an abundance of caution, Duane Morris had already imposed the ethical screen described above.  (*Id.* ¶ 3 and Exhibit B).

## LEGAL STANDARD

Disqualification "is a drastic measure which courts should hesitate to impose except in circumstances of absolute necessity."  *See, e.g., Kelly v. Roker*, 2012 U.S. Dist. LEXIS 33604, at *5-6 (N.D. Cal. March 13, 2012).  Disqualification frustrates the client's right to counsel, impinges on an attorney's interest in a representation, and imposes a financial burden in replacing disqualified counsel.  *Kirk v. First American Title Insurance Co.*, 183 Cal. App. 4th 776, 792 (Cal. App. 2d Dist. 2010).  Disqualification may be "used for purely strategic purposes to delay the litigation" or "harass the opposing party."  *H.F. Ahmanson & Co. v. Salomon Brothers, Inc.*, 229 Cal. App. 3d 1445, 1454 (Cal. App. 2d Dist. 1991); *see also Synergy Tech & Design, Inc. v. Terry*, 2007 U.S. Dist. LEXIS 34463, at *18 (N.D. Cal. May 2, 2007).[2]  Accordingly, the moving party bears a "heavy burden and must satisfy a high standard of proof," *In re Marvel*, 251 B.R. at 871, and motions to disqualify are subject to "particularly strict judicial scrutiny." *Optyl Eyewear Fashion Int'l Corp. v. Style Cos.*, 760 F.2d 1045, 1050 (9th Cir. 1985) (quotations omitted).

---

[2] Indeed, filing a baseless motion for disqualification is itself a violation of ethical rules. *See, e.g., Adriana Int'l Corp. v. Lewis & Co.*, 913 F.2d 1406, 1415-16 (9th Cir. 1990) (affirming imposition of sanctions for filing baseless motion for disqualification); *Marvel v. Universal Bank, N.A.*, 251 B.R. 869 (N.D. Cal. 2000) (sanctioning lawyer for filing baseless motion for disqualification).

California law governs MDVIP's motion.  *See In re County of Los Angeles*, 223 F.3d 990, 995 (9th Cir. 2000); Central District of California Local Rule 83-3.1.2. California Rule of Professional Conduct 3-310(E) provides that "[a] member shall not, without the informed written consent of the client or former client, accept employment adverse to the client or former client where, by reason of the representation of the client or former client, the member *has obtained confidential information material to the employment*."  (emphasis added).  The Rule does *not* prohibit all representations of a client adverse to a lawyer's former client.

In a successive representation case, the party moving for disqualification must establish "that the targeted attorney (1) has actual knowledge of material confidential information or (2) is presumed to have acquired confidential information because of the relationship between the prior representation and the current representation." *Faughn v. Perez*, 145 Cal. App. 4th 592, 603 (Cal. App. 5th Dist. 2006). "[S]uccessive representations will be 'substantially related' when the evidence before the trial court supports a rational conclusion that information material to the evaluation, prosecution, settlement or accomplishment of the former representation given its factual and legal issues is also material to the evaluation, prosecution, settlement or accomplishment of the current representation given its factual and legal issues." *Faughn*, 145 Cal. App. 4th at 604-05 (quoting *Jessen*, 111 Cal. App. 4th at 713); *see also* Restatement (Third) of the Law Governing Lawyers § 132.  Information is "material" only if it is "directly in issue or of critical importance." *Farris v. Fireman's Fund Ins. Co.*, 119 Cal. App. 4th 671, 680 (Cal. App. 5th Dist. 2004).

Even where one lawyer in a firm is conflicted, that conflict need not be imputed to other members of the firm where a "timely imposed" ethical screen that includes "preventive measures to guarantee that information will not be conveyed" separates the conflicted lawyer from others in her firm. *Kirk*, 183 Cal. App. 4th at 810; *see also Chambers v. Superior Court*, 121 Cal. App. 3d 893 (Cal. App. 3d Dist. 1981).

# ARGUMENT

I.   **Disqualification is inappropriate because this case is not substantially related to *Lehigh Valley.***

MDVIP's motion depends on its claim that this case is "substantially related" to *Lehigh Valley.  See Fabric Selection, Inc. v. Wal-Mart Stores, Inc.*, 2009 U.S. Dist. LEXIS 111329, at *7-8 (C.D. Cal. Nov. 17, 2009).  In applying the "substantial relationship" test, "courts ask whether confidential information material to the current dispute would normally have been imparted to the attorney by virtue of the nature of the former representation."  *H.F. Ahmanson & Co. v. Salomon Bros.*, 229 Cal. App. 3d 1445, 1454 (Cal. App. 2d Dist. 1991).  In particular, courts consider "[1] the similarities between the two factual situations, [2] the legal questions posed, and [3] the nature and extent of the attorney's involvement with the cases."  *Id.* at 1455.

A.   **This case is not factually similar to *Lehigh Valley.***

There is no factual similarity between this case and *Lehigh Valley.*   First, the factual allegations in *Lehigh Valley* related to patient records and an alleged violation of HIPAA.  In contrast, this case does not relate in any way to MDVIP's compliance with HIPAA or its handling of confidential patient information.  Second, *Lehigh Valley* concerned the actions of a single physician who never performed as an MDVIP affiliated physician.  This case does not involve the hospital, the geographic market, or the physician in *Lehigh Valley.*

MDVIP now argues that "LVPG was actually challenging MDVIP's attempt to enter the Allentown, Pennsylvania physician services market to compete with LVPG." (Def. Mem. of Points and Authorities In Support of Mot. to Disqualify Pl. Counsel ("Mtn. to Disqualify") at 10, ECF No. 27).  But a review of the complaint filed in *Lehigh Valley* clearly shows that LVPG never claimed that MDVIP engaged in any anticompetitive conduct.  LVPG did not allege that any patient left LVPG or joined an MDVIP affiliated practice as a result of MDVIP's actions, and it claimed no specific

1    harm other than its potential liability under HIPAA.  The physician in *Lehigh Valley*
2    never practiced as an MDVIP affiliated physician.

3         MDVIP also claims that both *Lehigh Valley* and this case "focus . . . on
4    MDVIP's recruitment and contracting practices."  (Harris Decl. ¶ 13, ECF No. 27-2).
5    However, the issue here is not how MDVIP recruits physicians or uses patient lists of
6    those physicians, but how MDVIP forecloses competition by requiring physicians to
7    sign contracts with post-termination non-compete clauses.  *Lehigh Valley* involved
8    allegations that a particular physician violated HIPAA by providing a patient list to
9    MDVIP, and that MDVIP violated HIPAA by using it to conduct a survey.  LVPG
10   never alleged that MDVIP's efforts to recruit even that particular doctor were
11   improper, or that the Participation Agreement that the doctor signed was invalid.   In
12   contrast, this case involves a claim by a competing turn-key concierge medicine
13   program that the non-compete provisions in MDVIP's Participation Agreement and
14   MDVIP's use of sham litigation violate the antitrust and California competition laws.
15   Thus, a key issue in this case is not MDVIP's method of recruiting physicians or use
16   of patient information in the first place, but rather the contracts it requires those
17   physicians to sign once it has recruited them that preclude those physicians from
18   signing with other competitors even after those contracts expire.

19        The only similarity between the cases is that they both involve concierge
20   medicine.  However, where the only factual connection between two representations is
21   that they "f[a]ll within the same general subject," there is no substantial similarity
22   between them.  *Ahmanson*, 229 Cal. App. 3d at 1456; *see also Abbott v. United States*
23   *IRS*, 399 F.3d 1083, 1087 (9th Cir. 2005) (declining to disqualify an attorney who was
24   concurrently an IRS consultant in an air rights case and an attorney for an individual
25   taxpayer); *IPVX Patent Holdings, Inc. v. 8x8, Inc.*, 2013 U.S. Dist. LEXIS 178858, at
26   *11 (N.D. Cal. Dec. 19, 2013) (discussion of "related subject matter . . . does not
27   necessarily establish a substantial relationship"); *Fabric Selection, Inc. v. Wal-Mart*
28   *Stores, Inc.*, 2009 U.S. Dist. LEXIS 111329, at *9 (C.D. Cal. Nov. 17, 2009) (cases

1   not substantially related even though both "involve[d] allegations of garment design

2   copyright infringement" because "the suppliers, vendors, and fabric designs

3   themselves are dissimilar."); *Wingnut Films, Ltd. v. Katja Motion Pictures Corp.*,

4   2007 U.S. Dist. LEXIS 96132, at *17-18 (C.D. Cal. Jan. 17, 2007) (no disqualification

5   where both litigations involved soundtrack agreements, because prior litigation did not

6   involve the same agreement at issue in the instant litigation); *Hewlett-Packard Co. v.*

7   *Nu-Kote Int'l, Inc.*, 1995 U.S. Dist. LEXIS 22615, at *14 (N.D. Cal. March 8, 1995)

8   (no disqualification even where successive litigations involved IP issues, because

9   instant litigation related to inkjet cartridges, and prior litigation involved laser printer

10   cartridges).

11        The refusal by courts to disqualify merely because of general similarities

12   between successive representations makes sense.  Otherwise, counsel would almost

13   always be precluded from accepting a case adverse to a former client.  Indeed, were

14   MDVIP's position accepted, Duane Morris would be precluded from representing any

15   entity or physician in the concierge medicine marketplace even though it has no

16   ongoing relationship with MDVIP.  In every representation, a lawyer will learn at

17   least something about her clients' industry, business practices, and litigation strategy.

18   But California courts have made clear that disqualification is *not* the rule in all

19   successive representation cases.

20       **B.**    **The legal issues in this case are distinct from the issues in *Lehigh***

21            ***Valley.***

22        This case presents distinctly different legal issues than *Lehigh Valley*.  Most of

23   the briefing in *Lehigh Valley* related to LVPG's obligations under HIPAA, which is

24   clearly not at issue in this litigation.  Nominally, *Lehigh Valley* involved claims of

25   trade secret misappropriation and tortious interference, which LVPG asserted because

26   it lacked a cause of action under HIPAA.

27        To establish its trade secrets claim, LVPG would have had to prove that its

28   patient list was a trade secret; that Dr. Kender disclosed it without authorization; and

that it was acquired by improper means or under circumstances giving rise to a duty to maintain its secrecy. *Synthes, Inc. v. Emerge Medical, Inc.*, 2014 U.S. Dist. LEXIS 78218, at *238-39 (E.D. Pa. June 5, 2014).

To make out its claims for tortious interference, LVPG would have had to establish "(1) the existence of a contractual relationship between [LVPG] and a third party; (2) purposeful action on the part of [MDVIP] intended to harm the relationship; (3) the absence of privilege or justification on the part of [MDVIP]; and (4) actual damages resulting from [MDVIP's] conduct." *Hillis Adjustment Agency, Inc. v. Graham Co.*, 911 A.2d 1008, 1012 (Pa. Super. 2006).

In contrast, this case does not involve the issue of whether patient lists are trade secrets or whether MDVIP interferes with contracts when it recruits physicians. The legal questions in this case are whether MDVIP has a monopoly in certain geographic markets across the United States; whether its physician contracts or employment agreements contain unduly restrictive terms with no competitive justification; and whether it engaged in sham litigation to stifle competition. These issues are totally distinct from the legal issues in *Lehigh Valley*.

**C.    The prior representation was short, and Duane Morris learned only general information about MDVIP's business.**

In determining whether the nature and extent of a lawyer's involvement in a previous representation adverse to a current client requires disqualification, courts consider "the time spent by the attorney on the earlier case, the type of work performed, and the attorney's possible exposure to formulation of policy or strategy." *Ahmanson*, 229 Cal. App. 3d at 1457. Duane Morris's previous representation was limited to the issues in *Lehigh Valley*, which was actively litigated for only three months. Duane Morris was not in a position to learn any confidential information material to this case.

MDVIP fails to identify specific information that Duane Morris would have acquired in the *Lehigh Valley* case that would be relevant to this litigation. For

14

**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT MDVIP, INC.'S MOTION TO DISQUALIFY PLAINTIFF'S COUNSEL**

instance, it claims that in its Answer in *Lehigh Valley*, Duane Morris "described MDVIP's business philosophy and practices in great detail." (Mot. to Disqualify at 4). But the only specific piece of information in the quote cited by MDVIP is that MDVIP limits participating physicians' practices to 600 patients. This information regarding the number of patients is publicly available on MDVIP's website. (*see* MDVIP Frequently Asked Questions, http://www.mdvip.com/frequently-asked-questions, last accessed September 16, 2014). And although the pleadings in *Lehigh Valley* did generally address "MDVIP's physician recruitment approach," the quote identified by MDVIP illustrates that besides offering a general explanation of concierge medicine, the focus was on MDVIP's compliance with HIPAA in recruiting a physician. (Mot. to Disqualify at 4, ECF No. 27). Indeed, MDVIP points to the fact that Duane Morris "describe[d] in detail the communications that MDVIP had, not only with Dr. Kender, but also with the upper level management at LVPG about becoming MDVIP participating physicians." (*Id.* at 5). But that only illustrates that *Lehigh Valley* was focused on a particular doctor (Dr. Kender) and medical practice.

MDVIP further argues that "in the course of that nearly two year representation, Duane Morris' lawyers met with, spent hours on the telephone with and exchanged scores of e-mail communications with MDVIP's in-house counsel and top management concerning its physician recruitment strategies and practices, MDVIP's legal strategies and its confidential business plans." (*Id.* at 5). However, *Lehigh Valley* was actively litigated for only about three months, not two years. And the pleadings in that case indicate that the parties engaged in only limited discovery – LVPG refused to participate in depositions, and its document requests to MDVIP were focused on MDVIP's relationship with the specific doctor in that case. It is implausible that MDVIP would need or desire to share detailed information about its company-wide recruitment and litigation strategies with a firm that it hired for a single representation that essentially lasted three months.

1    Regardless, MDVIP fails to identify any specific strategy that Duane Morris has
2    knowledge of that is material to this litigation, or a single type of MDVIP policy that
3    Duane Morris could have influenced.  The only allegedly confidential information
4    MDVIP identifies with any degree of specificity at all is its use of "various third party
5    data analyses . . . to evaluat[e] physician practices."  (Declaration of Michele Lynn
6    Martello in Support of MDVIP's Mot. to Disqualify ¶ 10, ECF No. 27-3; *see also*
7    Harris Decl. ¶ 18, ECF No. 27-2).  Although "third party data analysis" is referred to,
8    it is completely immaterial to the issues in this case.  The issue in this case is the
9    anticompetitive contracts that MDVIP requires its physicians sign, not the manner in
10   which MDVIP evaluates physician practices.  Moreover, by definition "third party
11   data analysis" is information from a *third party,* not MDVIP's proprietary
12   information.

13   A movant cannot rely on unsupported inferences to satisfy the "substantial
14   relationship" test.  In *Faughn*, a defendant hospital moved to disqualify the plaintiff's
15   lawyer in a medical malpractice case who had previously represented a number of
16   other hospitals owned by the same parent company, also in medical malpractice cases.
17   The moving hospital asserted that the parent company "directly control[led]" the
18   subject litigation and that the hospital played no role in the defense.  *Faughn*, 145 Cal.
19   App. 4th at 605.  The Court of Appeals held that the trial court erred in accepting
20   those assertions "based on inference" where they were not directly supported by the
21   hospital's declaration.  *Id.* at 605-06.  The appellate court instructed that a court is to
22   "examine what the record does not contain.  In particular, are there facts within the
23   control of the moving party that (1) could be disclosed without defeating the purpose
24   of protecting confidential information, and (2) are conspicuous by their absence?"  *Id.*
25   at 606-07.  *See also In re Marriage of Zimmerman*, 16 Cal. App. 4th 556, 565 (Cal.
26   App. 1st Dist. 1993); *Hartford Cas. Ins. Co. v. Am. Dairy & Food Consul. Labs.*, 2010
27   U.S. Dist. LEXIS 101277, at *11 (E.D. Cal. Sept. 27, 2010) (a movant must present
28

evidence that "could be disclosed without defeating the purpose of protecting confidential information.") (quoting *Faughn*, 145 Cal. App. 4th at 607).[3]

MDVIP's assertions reduce to a claim that Duane Morris learned generally about how MDVIP does business.  But California has not "adopt[ed] the so-called playbook approach." *Fremont Indemnity Co. v. Fremont General Corp.*, 143 Cal. App. 4th 58, 69 (Cal. App. 2d Dist. 2006).  Thus there is no disqualifying conflict unless "the information acquired during the first representation be 'material' to the second, that is, it must be found to be directly at issue in, or have some critical importance to, the second representation." *Id.* (citing *Jessen*).  Information about the first client's "overall structure and practices," "litigation philosophy," or "key decision makers" does not "of itself require disqualification unless it were found to be 'material'" *Id.* (quotations and citations omitted); *see also Faughn*, 145 Cal. App. 4th at 610; *Wingnut Films*, 2007 U.S. Dist. LEXIS 96132, at *14, 18 (lawyer must have had "pervasive participation and [a] personal role in shaping the same practices and procedures under attack in the subsequent lawsuit"); *accord,* Restatement (Third) of the Law Governing Lawyers § 132 cmt. d(iii) (2000).

*Farris*, cited by MDVIP, is readily distinguishable. (*see* Mot. to Disqualify at 13).  *Farris* confirmed that California has not "adopt[ed] the so-called playbook approach." 119 Cal. App. 4th at 680.  Instead, the court held that disqualification is required only where "the information acquired during the first representation [is] 'material' to the second; that is, it must be found to be directly at issue in, or have some critical importance to, the second representation." *Id*.  The court "emphasize[d] that [its] opinion d[id] not rest entirely or even in principal part upon [the lawyer's] prior acquisition of general 'playbook' information about [the movant]" but rather

---

[3] The fact that MDVIP has publicly filed unredacted copies of the invoices it received from Duane Morris tends to indicate the lack of confidentiality of the information.

17

**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT MDVIP, INC.'S MOTION TO DISQUALIFY PLAINTIFF'S COUNSEL**

"upon the evidence of [the lawyer's] pervasive participation, and indeed his personal role in shaping, [the movant's] practices and procedures." *Id.* at 688.

Also, the facts in *Farris* were very different from this case.  In *Farris*, the disqualified lawyer "did substantial work on coverage matters" for the movant, an insurance company that was being sued for bad faith and breach of an insurance contract.  *Id.* at 682.  He "provided ongoing legal advice on coverage issues . . .in more than two hundred coverage claims over an extended period of time and also provided general guidance to . . . decision makers. . . . He developed direct, personal relationships with key decision makers . . . He was privy to, and a part of, the decisionmaking process undertaken when [the movant] settled a coverage dispute rather than litigate it."  *Id.*  In contrast, MDVIP alleges that Duane Morris should be disqualified because it represented it in a single case that was actively litigated for only three months.

## II.   Duane Morris has imposed an ethical screen, eliminating the risk that MDVIP's client confidences will be compromised.

MDVIP claims that Duane Morris "does not intend to cure its conflict of interest."  (Mot. to Disqualify at 13, ECF No. 27).  As set forth above, there is no conflict of interest.  Nonetheless, Duane Morris voluntarily imposed, out of an abundance of caution, an ethical screen to ensure that no information learned by any Duane Morris lawyer in *Lehigh Valley* is shared with any lawyer working on this case.  (Hoffman Decl. ¶ 3 and Exhibit B, ECF No. 27-1).  Accordingly, "[t]he team handling the *SignatureMD* case is barred from obtaining access to any of MDVIP's documents or to any documents or discussions related to that case at the firm."  (*Id.*).

It is unnecessary to impute a lawyer's conflict onto other members of her firm where there is  "evidence that ethical screening will effectively prevent the sharing of confidences in a particular case."  *Kirk*, 183 Cal. App. 4th  at 801.  Ethical screens preserve a party's right to its counsel of choice and an attorney's interest in representing her client, and eliminate the financial hardship of replacing disqualified

counsel and the potential for tactically motivated disqualification motions, while

ensuring that the confidences of a past client are protected.  *See id.* at 794; *see also*

*Rhaburn v. Superior Court*, 140 Cal. App. 4th 1566, 1575 (Cal. App. 4th Dist. 2006)

("[A] rigid rule of disqualification can create hardship to the new client and can also

be abused as an improper tactical maneuver.").

Courts have held that an ethical screen is sufficient to preserve past client

confidences even where, unlike here, there actually is a relationship between

successive litigations.  For instance, in *Openwave Sys. v. Myriad France, S.A.S.*, 2011

U.S. Dist. LEXIS 35526 (N.D. Cal. March 31, 2011), Myriad France, the defendant in

a contract dispute, moved to disqualify the plaintiff's firm because a partner at the

plaintiff's firm who was not involved in the current litigation had previously

represented Myriad France when he was employed by another firm.  The court

declined to disqualify the conflicted lawyer's firm even though, unlike this case,

Myriad France's former lawyer had advised it on the very contract that was at issue in

the current litigation.  *Id.* at *3.

The elements of an effective screen are satisfied in this case.

First, the screen was "timely imposed."  *Kirk*, 183 Cal. App. 4th at 645.  Duane

Morris notified all affected lawyers and staff of the ethical screen promptly after

Duane Morris was engaged by SignatureMD in this case, and several weeks before

this case was filed.  (Bricknell Decl. ¶ 8).

Second, the screen imposes concrete "*preventive measures* to guarantee that

information will not be conveyed."  *Kirk*, 183 Cal. App. 4th at 810 (emphasis in

original).  "[T]he inquiry before a trial court considering the efficacy of any particular

ethical wall is *not* to determine whether all of a prescribed list of elements . . . have

been established" but rather is "a case-by-case inquiry focusing on whether the court

is satisfied that the tainted attorney has not had and will not have any improper

communication with others at the firm concerning the litigation."  *Id.* at 811.  To guide

that inquiry the California Court of Appeals has suggested a number of "typical

1   elements" of an ethical wall, including "(1) physical, geographic, and departmental

2   separation of attorneys; (2) prohibitions against and sanctions for discussing

3   confidential matters; (3) established rules and procedures preventing access to

4   confidential information and files; (4) procedures preventing a disqualified attorney

5   from sharing in the profits from the representation; and (5) continuing education in

6   professional responsibility." *Kirk*, 183 Cal. App. 4th at 810-11 (quotations omitted).

7          Regarding the first and second factors, Duane Morris has strictly forbidden

8   discussion of any issue relating to MDVIP, *Lehigh Valley*, or the current litigation

9   between the lawyers on this case and those who represented MDVIP in *Lehigh Valley*

10  and has ascertained that no discussions or review of documents have taken place.

11  (Bricknell Decl. ¶ 8).   The purpose of the separation requirement is to "prevent the

12  *accidental* disclosure of confidential information." *Kirk*, 183 Cal. App. 4th at 811.

13  Any accidental disclosure is extremely unlikely in this case.  Duane Morris is a large

14  international law firm, with more than 700 attorneys, including over 310 attorneys in

15  its trial department and over 220 attorneys in its Philadelphia office.  (Bricknell Decl.

16  ¶ 2).  Further, there are a small number of attorneys involved and each is aware of his

17  or her obligations under the ethical screen.

18         Third, the lawyers and staff on this case and those who worked on the *Lehigh*

19  *Valley* matter are prevented from accessing either the physical or electronic files

20  relating to the case each is screened from.  Physical files are prominently labeled as

21  restricted under the ethical screen, and Duane Morris's electronic records management

22  system automatically prohibits unauthorized access to screened electronic files.

23  (Bricknell Decl. ¶ 8).

24         Fourth, the lawyers who represented MDVIP in *Lehigh Valley* will not share

25  any profits from Duane Morris's representation of SignatureMD in this case.[4]  (*Id.* ¶

26

27  _____

    [4] This factor "does not prohibit the screened lawyer from receiving a salary or
28  partnership share established by prior independent agreement," only "compensation
                                                                              (Continued…)

**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT MDVIP, INC.'S
MOTION TO DISQUALIFY PLAINTIFF'S COUNSEL**

9).  Thus, "there is no financial incentive for the disqualified attorney to covertly assist the representation."  *Kirk,* 183 Cal. App. 4th at 812.

There is no risk that MDVIP's confidences will be compromised because this case is wholly unrelated to *Lehigh Valley*.  The ethical screen imposed by Duane Morris provides further assurance that MDVIP's confidential information is protected.  Thus, Duane Morris's disqualification is unnecessary to protect MDVIP's interests.  Further, disqualification would deprive SignatureMD of its choice of counsel.  *See Kirk,* 183 Cal. App. 4th at 809 (noting that the availability of ethical screens "also implicates the interest in protecting a client who has established a long-standing relationship with counsel, and is at risk of losing that attorney by means of vicarious disqualification.")

## CONCLUSION

For the reasons above, this Court should deny MDVIP's Motion to Disqualify Plaintiff's Counsel.

Dated:   September 19, 2014          **DUANE MORRIS LLP**

By:     s/   Cyndie M. Chang
Cyndie M. Chang
Attorneys for Plaintiffs
Signature MD, Inc.

DM2\5133165.2

---

(Continued…)

directly related to the matter in which the lawyer is disqualified."  *Kirk*, 183 Cal. App. 4th at 812.