UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 14-5453 DMG (SSx) | Date | April 21, 2015 |
|---|---|---|---|

| Title | *Signature MD, Inc. v. MDVIP, Inc.* | Page | 1 of 14 |
|---|---|---|---|

Present: The Honorable   DOLLY M. GEE, UNITED STATES DISTRICT JUDGE

| KANE TIEN | NOT REPORTED |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiff(s) | Attorneys Present for Defendant(s) |
|---|---|
| None Present | None Present |

**Proceedings: IN CHAMBERS—ORDER RE DEFENDANT'S MOTION TO DISMISS [39]**

On November 7, 2014, Plaintiff Signature MD, Inc. filed the First Amended Complaint ("FAC") against Defendant MDVIP, Inc. alleging: (1) violations of the Sherman Act, 15 U.S.C. §§ 1 and 2; (2) violations of the Cartwright Act, Cal. Bus. & Prof. Code § 16720 *et seq.*; (3) violation of Cal. Bus. & Prof. Code § 16600; and (4) unfair competition in violation of Cal. Bus. & Prof. Code § 17200 *et seq.* [Doc. # 37.] On November 21, 2014, MDVIP moved to dismiss for failure to state a claim ("Mot."). [Doc. # 39.] On December 19, 2014, Signature MD opposed the motion. [Doc # 49.] On January 2, 2015, MDVIP filed its reply in support of the motion. [Doc. ## 51.]

# I.
# FACTUAL BACKGROUND[1]

## A.   Concierge Medicine

MDVIP operates the largest concierge medicine membership program in the United States. (FAC ¶ 2.) Concierge medicine is an alternative medical system wherein patients pay a monthly, quarterly, or yearly fee in exchange for services not customarily provided by Medicare or private insurance. (*Id.* ¶ 26.) These benefits include same-day appointments, physician availability via electronic communication, minimal office wait times, preventative and wellness services, and in-depth annual physicals. (*Id.* ¶ 27.) In order to accommodate the greater physician accessibility, concierge physicians typically have fewer patients than physicians practicing traditional medicine. (*Id.* ¶ 28.) Concierge physicians typically have between 200 and 600 patients, while traditional internists or family practitioners generally have approximately 2,000 patients. (*Id.*) To successfully practice concierge medicine, a physician must be unaffiliated with hospitals or large practice groups. (*Id.* ¶ 29.) As a consequence of this independence requirement, a small number of physicians are able to practice concierge medicine.

---

[1] The Court assumes the truth of the factual allegations in the FAC solely for the purpose of deciding this motion.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 14-5453 DMG (SSx) | | Date | April 21, 2015 |
|---|---|---|---|---|

| Title | *Signature MD, Inc. v. MDVIP, Inc.* | | Page | 2 of 14 |
|---|---|---|---|---|

(*Id.* ¶ 30-31.)  The majority of physicians who practice concierge medicine are located in affluent urban cities like Los Angeles, Miami, New York, Las Vegas, and Atlanta.  (*Id.* ¶ 33.)

Several companies offer physicians access to "turn-key" concierge medicine groups to assist physicians in converting their practices into concierge programs.  (*Id.* ¶ 34.)  These companies offer physicians access to their concierge medicine trade name, advertising, and support in exchange for an ongoing fee.  (*Id.* ¶¶ 35, 37.)

**B.     Defendant MDVIP**

MDVIP was formed in 2000 as one of the first companies offering turn-key concierge medicine membership.  (FAC ¶ 44.)  As part of its contract with member physicians, MDVIP requires them to retain no more than 600 concurrent patients.  (*Id.* ¶ 48.)  Plaintiff Signature MD was formed in 2007 and offers similar access to turn-key concierge medicine membership.  (*Id.* ¶ 55.)

The concierge medicine market share ownership is as follows:

- MDVIP:  71% of physician concierge contracts
- MDVIP:  86% of patients enrolled in concierge medicine
- MDVIP:  65-100% of the overall market share within a 25-mile radius of many large U.S. cities
- Concierge Choice:[2]  22% of physician concierge contracts
- Concierge Choice:  8% of patients enrolled in concierge medicine
- SignatureMD:  7% of physician concierge contracts
- SignatureMD:  6% of patients enrolled in concierge medicine

(*Id.* ¶¶ 61-63 64-66, 73.)

During a physician's contract term with MDVIP, MDVIP prohibits physicians from speaking or contracting with any other competing company offering concierge medicine.  (*Id.* ¶¶ 12, 75.)  Participating physician groups agree not to compete with MDVIP for a period of two years after the expiration of the contract.  (*Id.* ¶ 86.)  The contract defines "competing" as practicing concierge medicine within 10 miles of a previous office, or within 10 miles of the office of another physician affiliated with MDVIP.  *Id.*  MDVIP placed this post-contract limitation in its standard contract in 2009, shortly after Signature MD and Concierge Choice were formed.  (*Id.* ¶ 82.)  The overwhelming majority of current physician contracts are subject to this post-contract non-compete clause, particularly those in large cities.  (*Id.* ¶ 85.)

---

[2]Concierge Choice, a non-party, is a competitor of both Plaintiff and Defendant.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 14-5453 DMG (SSx) | | Date | April 21, 2015 |
|---|---|---|---|---|
| Title | *Signature MD, Inc. v. MDVIP, Inc.* | | Page | 3 of 14 |

In affluent urban areas, including parts of California, MDVIP requires a large liquidated damages provision in the non-compete clause of its contracts with member physicians.  (*Id.* ¶ 89.)  This provision requires a physician to pay $1 million if he or she leaves the program to join a competitor.  (*Id.*)  As a practical consequence of this clause, physicians have no choice but to continue with MDVIP or leave concierge medicine altogether.  (*Id.* ¶ 90.)  If an average physician were to leave and pay the liquidated damages, he or she would not be able to cover the average overhead cost, and would be forced to leave private practice.  (*Id.* ¶ 91.)  Due to this provision, the majority of Signature MD's economic foothold has been outside of the areas where MDVIP requires these provisions.  (*Id.* ¶ 106.)

Signature MD also alleges that MDVIP engages in anti-competitive behavior, such as:

(1)     threatening doctors with legal action for inquiring into joining a competitor concierge system (*id.* ¶ 108);

(2)     forcing physicians to sign non-disclosure agreements regarding non-confidential information relevant to contracting with other concierge groups (e.g., patient satisfaction surveys) (*id.* ¶ 109);

(3)     hiring patient advocates (individuals who speak to patients about the benefits of concierge medicine) on a very short-term basis, terminating their employment, and requiring them to sign a two-year non-compete restriction to refrain from employment with competitors (*id.* ¶¶ 110-13);

(4)     filing a series of baseless lawsuits against Signature MD and Concierge Choice for the sole purpose of limiting competition (*id.* ¶¶ 114-15);

(5)     abusing the discovery process in these lawsuits to speak with Signature MD's enrolled physicians absent any legally significant purpose, and misusing the discovery process to gain competitive intelligence about Signature MD's business model (*id.* ¶¶ 119, 120); and

(6)     sending demand letters to Signature MD for hiring MDVIP's former employees, notwithstanding that the hiring take place outside of the non-compete window (*id.* ¶ 116).

## II.
## JUDICIAL NOTICE

A court's review of a Rule 12(b)(6) motion to dismiss is generally limited to the contents of the complaint.  *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).  If

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 14-5453 DMG (SSx)** | Date | April 21, 2015 |
|---|---|---|---|

| Title | *Signature MD, Inc. v. MDVIP, Inc.* | Page | 4 of 14 |
|---|---|---|---|

considering evidence outside the pleadings on a Rule 12(b)(6) motion, a court "must normally convert the 12(b)(6) motion into a Rule 56 motion for summary judgment, and it must give the nonmoving party an opportunity to respond." *U.S. v. Ritchie*, 342 F.3d 903, 907-08 (9th Cir. 2003).

The Ninth Circuit has identified two exceptions to this general rule: (1) "a court may consider material which is properly submitted as part of the complaint," and "[i]f the documents are not physically attached to the complaint, they may be considered if the documents' authenticity . . . is not contested and the plaintiffs' complaint necessarily relies on them"; and (2) "under Fed. R. Evid. 201, a court may take judicial notice of matters of public record," but "a court may not take judicial notice of a fact that is subject to reasonable dispute." *Lee v. City of Los Angeles*, 250 F.3d 668, 688-89 (9th Cir. 2001) (internal quotations and citations omitted).

MDVIP requests judicial notice of numerous documents including: (1) a study on retainer based physicians; (2) Signature MD's website; (3) a 2012 physician census; (4) a list of Concierge Choice physicians; (5) the Florida statute expressly permitting non-compete clauses; (6) a Florida state court's decision regarding Signature MD's motion to dismiss; (7) a Florida federal court's enforcement of the non-compete clauses; and (8) a *Forbes* magazine article. [Doc. # 40].

With respect to the studies, census, and the list of physicians, the Court is unable to determine the veracity of this data. These documents are therefore subject to reasonable dispute. Indeed, Signature MD does in fact dispute the accuracy of these sources. (Plaintiff's Objection to Defendant's Request for Judicial Notice [Doc # 50] at 1 – 3.) Moreover, Defendant's request for notice of this information goes to the substantive merits of Signature MD's claim. To the extent some of this information may run counter to Signature MD's allegations, the Court in ruling on this motion to dismiss must accept all of Signature MD's allegations as true. As such, the Court declines to take judicial notice of this information.

With respect to the Florida legal sources, for the reasons set forth below, these are irrelevant to Signature MD's claim. Signature MD does not seek to invalidate contracts outside of the State of California, and consequently there is no due process issue. Lastly, with respect to the *Forbes* article, the only relevance for this article is for the truth contained therein. As such, the article is hearsay and the information in this article is subject to reasonable dispute. *See e.g.*, *Mat Van, Inc. v. Sheldon Good & Co. Auctions*, LLC, 2008 U.S. Dist. LEXIS 8724, at *22-24 (S.D. Cal. Feb. 6, 2008) (denying judicial notice of a *Forbes* article).

Accordingly, Defendant's request for judicial notice is **DENIED** in its entirety.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 14-5453 DMG (SSx) | Date | April 21, 2015 |
|---|---|---|---|

| Title | *Signature MD, Inc. v. MDVIP, Inc.* | Page | 5 of 14 |
|---|---|---|---|

## III.
## LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires a pleading that states a claim for relief contain "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964, 167 L. Ed. 2d 929 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957)). While a pleading need not contain "detailed factual allegations," it must contain "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286, 106 S. Ct. 2932, 92 L. Ed. 2d 209 (1986)). The pleading must articulate "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

Under Rule 12(b)(6), a party may seek dismissal of a claim for failure to state a claim upon which relief can be granted. A court may grant such a dismissal only where the pleading party fails to present a cognizable legal theory or to allege sufficient facts to support a cognizable legal theory. *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010). In evaluating the sufficiency of a pleading, as discussed above, courts generally must accept all factual allegations as true. Legal conclusions, in contrast, are not entitled to the assumption of truth. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (citing *Twombly*, 550 U.S. at 555).

Federal Rule of Civil Procedure 15(a) provides that a party may amend a pleading with the court's leave, and that "[t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2); *see also Moss v. Secret Serv.*, 572 F.3d 962, 972 (9th Cir. 2009) (requests for leave to amend should be granted with "extreme liberality"). "[L]eave to amend should be granted unless amendment would cause prejudice to the opposing party, is sought in bad faith, is futile, or creates undue delay." *Johnson v. Mammoth Recreations*, 975 F.2d 604, 607 (9th Cir. 1992) (citation omitted). "[A] proposed amendment is futile only if no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense." *Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988).

## IV.
## DISCUSSION

### A.    Market Definition

An essential element of both sections 1 and 2 of the Sherman Act is the "relevant market" of the alleged anticompetitive actions. *Twin City Sportservice, Inc. v. Charles O. Finley & Co.*, 676 F.2d 1291, 1300 (9th Cir. 1982). A plaintiff must allege both that a "relevant market" exists and that the defendant has power within that market. *Newcal Indus., Inc. v. Ikon Office Solution*,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 14-5453 DMG (SSx) | Date | April 21, 2015 |
|---|---|---|---|

| Title | *Signature MD, Inc. v. MDVIP, Inc.* | Page | 6 of 14 |
|---|---|---|---|

513 F.3d 1038, 1044 (9th Cir. 2008). There is no requirement that either of these elements be pled with specificity. *Id.* at 1045; *see also United States v. Conn. Nat'l Bank*, 418 U.S. 656, 669, 94 S.Ct. 2788, 2796 (1974) (noting that an element of "fuzziness would seem inherent in any attempt to delineate the relevant geographical market.").

"An antitrust complaint therefore survives a Rule 12(b)(6) motion unless it is apparent from the face of the complaint that the alleged market suffers a fatal legal defect." *Newcal*, 513 F.3d 1045. Because the validity of the "relevant market" is typically a factual element rather than a legal element, alleged markets generally survive scrutiny under Rule 12(b)(6) subject to factual testing by summary judgment or trial. *High Technology Careers v. San Jose Mercury News*, 996 F.2d 987, 990 (9th Cir. 1993) ("The process of defining the relevant market is a factual inquiry for the jury"); *see also Twin City Sportservice*, 676 F.2d at 1299 ("the search for the relevant market is basically a factual inquiry").

MDVIP contends that Signature MD's market definition is unreasonable, because it provides no clear boundaries in the relevant geographic markets and contradicts itself by maintaining both a "nationwide market" and the 25-mile radius definition. (Mot. at 4-5 [Doc. # 39].)

Signature MD alleges two relevant markets, however, for two separate Sherman Act violations. The first is the relevant market for MDVIP's alleged monopoly on *physician* choice of concierge health providers, which is national in scope. (FAC ¶¶ 59-60.) Signature MD alleges that the relevant market for this claim is the concierge medicine membership program market throughout the United States ("MDVIP dominates and controls the Concierge Medicine Membership Program Market in the U.S. and has exclusive contracts with 71% of the physicians enrolled in turn-key concierge medicine programs in the U.S."). (*Id.* ¶ 61.)

The second is the relevant market for MDVIP's alleged monopoly on *patient* choice of health providers, which is local in scope. (*Id.* ¶¶ 69-72.) Signature MD alleges that the relevant market for this claim is the concierge medicine membership programs within a 25-mile radius of a number of large cities in the United States. (*Id.* ¶ 73.) Signature MD alleges that patients are unwilling to travel more than 30 minutes for routine medical procedures, and consequently the market definition is about a 25-mile radius in major markets. (*Id.* ¶¶ 69-72.) The Court finds this to be a reasonable definition, as patient markets for healthcare tend to be highly localized. *See FTC v. Ind. Fed'n of Dentists*, 476 U.S. 447, 461, 106 S. Ct. 2009, 90 L. Ed. 2d 445 (1986) (markets for dental services tend to be relatively localized).

MDVIP further argues that Signature MD's market definition is unreasonable because Signature MD offers no explanation as to why physician-established concierge programs should not be included in the concierge market definition. (Mot. at 12-14.) Signature MD asserts that

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 14-5453 DMG (SSx) | Date | April 21, 2015 |
|---|---|---|---|

| Title | *Signature MD, Inc. v. MDVIP, Inc.* | Page | 7 of 14 |
|---|---|---|---|

independent physician-established concierge programs are distinct from its product-market definition because of the differences in fee structures, the high initial capital investment as a barrier to entry, and the differences in marketing and branding.  (FAC ¶¶ 34-43.)  As such, Signature MD has sufficiently alleged that there is no "reasonable interchangeability of use" or "cross-elasticity of demand" with respect to physician-established concierge programs.  *Brown Shoe Co. v. U.S.*, 370 U.S. 294, 325, 82 S. Ct. 1502, 8 L. Ed. 2d 510 (1962) ("The outer boundaries of a product market are determined by the reasonable interchangeability of use or the cross-elasticity of demand between the product itself and substitutes for it"); *see also Thurman Indus., Inc. v. Pay 'N Pak Stores, Inc.*, 875 F.2d 1369, 1374 (9th Cir. 1989) ("[T]he relevant product market may be narrowed beyond the boundaries of physical interchangeability and cross-price elasticity").

Signature MD's definition of the relevant market survives this motion to dismiss.

**B.      Section 1 of the Sherman Act**

Section 1 of the Sherman Act prohibits the creation and maintenance of any "contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations."  15 U.S.C. § 1.  "In order to prevail on a cause of action for violation of 15 U.S.C. § 1, a plaintiff must show (1) there was an agreement, conspiracy, or combination between two or more entities; (2) the agreement was an unreasonable restraint of trade under either a *per se* or rule of reason analysis; and (3) the restraint affected interstate commerce."  *Am. Ad Mgmt., Inc. v. GTE Corp.*, 92 F.3d 781, 784 (9th Cir. 1996).

Much of the anti-competitive conduct alleged by Signature MD—filing sham lawsuits, abusing the discovery process, and threatening unreasonable legal action—is unilateral, and therefore does not fall under the purview of Section 1.  *Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752, 768, 104 S. Ct. 2731, 2740 (1984) (internal citation and quotation marks omitted) ("Section 1 of the Sherman Act . . . reaches unreasonable restraints of trade effected by a 'contract, combination . . . or conspiracy' between separate entities.  It does not reach conduct that is wholly unilateral.") (internal citation omitted).  Signature MD also alleges, however, that MDVIP has engaged in anti-competitive behavior by imposing post-contract non-compete clauses on its physician affiliates and other employees, and non-disclosure agreements regarding information that cannot reasonably be considered confidential.

"Employee agreements not to compete are proper subjects for scrutiny under section 1 of the Sherman Act."  *Newburger, Loeb & Co. v. Gross*, 563 F.2d 1057, 1082 (2d Cir. 1977).  The Ninth Circuit has stated that, "[e]mployee covenants not to compete or interfere with the employer's business after the end of the employment relationship should not be tested under the *per se* rule.  *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 900 (9th Cir. 1983).  "Such covenants

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 14-5453 DMG (SSx) | Date | April 21, 2015 |
|---|---|---|---|

| Title | *Signature MD, Inc. v. MDVIP, Inc.* | Page | 8 of 14 |
|---|---|---|---|

often serve legitimate business concerns such as preserving trade secrets and protecting investments in personnel." *Id.*; *see also Continental T.V., Inc. v. GTE Sylvania Inc.*, 433 U.S. 36, 49–50, 97 S. Ct. 2549, 2557–58, 53 L. Ed. 2d 568 (1977) ("*Per se* rules of illegality are appropriate only when they relate to conduct that is manifestly anticompetitive."). The Court will therefore assess the non-compete agreements under the rule of reason.

"The rule of reason analysis consists of three components:  (1) the persons or entities to the agreement intend to harm or restrain competition; (2) an actual injury to competition occurs; and (3) the restraint is unreasonable as determined by balancing the restraint and any justifications or pro-competitive effects of the restraint." *Am. Ad Mgmt*, 92 F.3d at 789.  "[T]he standard for determining whether an arrangement violates Section 1 of the Sherman Act is whether it is so inherently anti-competitive in purpose or effect, or both, as to constitute an unreasonable restraint of trade." *Trixler Brokerage Co. v. Ralston Purina Co.*, 505 F.2d 1045, 1051 (9th Cir. 1974) (where non-compete provision was reasonable in scope and duration and served a legitimate business purpose, it was not in restraint of trade).  "The primary disadvantages of the 'rule of reason' are that it requires difficult and lengthy factual inquiries and very subjective policy decisions." *Denver Rockets v. All-Pro Mgmt., Inc.*, 325 F. Supp. 1049, 1063 (C.D. Cal.), *reinstated by Haywood v. Nat'l Basketball Ass'n*, 401 U.S. 1204, 91 S. Ct. 672, 28 L. Ed. 2d 206 (1971).

Signature MD alleges that MDVIP includes post-contract non-compete clauses with an unreasonably large liquidated damage provision in its employment contracts, forces physicians to sign non-disclosure agreements relevant to contracting with other concierge groups even where that information could not reasonably be considered confidential, and hires patient advocates on a very short-term basis and then requires them to sign two-year non-compete restrictions to refrain from employment with competitors.  These facts adequately allege the existence of agreements intended to harm or restrain competition, and that the restraints are unreasonable in scope and duration to serve a legitimate business purpose.  As discussed below, Signature MD also has successfully pled antitrust injury.  While the reasonableness of the restrictions will ultimately be a factual determination, Signature MD has stated a claim under Section 1 of the Sherman Act.

## C.    Section 2 of the Sherman Act

"To establish a Sherman Act § 2 violation for attempted monopolization, a private plaintiff seeking damages must demonstrate four elements:  (1) specific intent to control prices or destroy competition; (2) predatory or anticompetitive conduct directed at accomplishing that purpose; (3) a dangerous probability of achieving 'monopoly power'; and (4) causal antitrust injury."  *Rebel Oil Co. v. Atl. Richfield Co.*, 51 F.3d 1421, 1432-33 (9th Cir. 1995) (citing *McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 811 (9th Cir. 1988)).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 14-5453 DMG (SSx) | | Date | April 21, 2015 |
|---|---|---|---|---|

| Title | *Signature MD, Inc. v. MDVIP, Inc.* | | Page | 9 of 14 |
|---|---|---|---|---|

The fourth element, causal antitrust injury, is defined as "injury of the type the antitrust laws were intended to prevent [which] flows from that which makes defendants' acts unlawful." *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489, 97 S. Ct. 690, 50 L. Ed. 2d 701 (1977). To show antitrust injury, a plaintiff must prove that his loss flows from an anticompetitive aspect or effect of the defendant's behavior, since it is "inimical to the antitrust laws" to award damages for losses stemming from acts that do not hurt competition. *Atlantic Richfield*, 495 U.S. at 334. If the injury flows from aspects of the defendant's conduct that are beneficial or neutral to competition, there is no antitrust injury, even if the defendant's conduct is illegal *per se*. *Id.*

In determining whether a plaintiff was injured by an anticompetitive aspect or effect of a defendant's behavior, a court must be careful in defining "competition." Competition consists of "rivalry among competitors." *Hasbrouck v. Texaco, Inc.*, 842 F.2d 1034, 1040 (9th Cir. 1987), *aff'd*, 496 U.S. 543, 110 L. Ed. 2d 492, 110 S. Ct. 2535 (1990). Conduct that eliminates rivals clearly reduces competition, but reduction of competition does not invoke the Sherman Act until it harms consumer welfare. *Reiter v. Sonotone Corp.*, 442 U.S. 330, 343, 60 L. Ed. 2d 931, 99 S. Ct. 2326 (1979). An act is deemed anticompetitive under the Sherman Act only when it harms both allocative efficiency *and* raises the prices of goods above competitive levels or diminishes their quality. *See Brooke Group Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 113 S. Ct. 2578, 2588, 125 L. Ed. 2d 168 (1993). "Without market power to increase prices above competitive levels, and sustain them for an extended period, a predator's actions do not threaten consumer welfare." *Rebel Oil Co.*, 51 F.3d at 1434.

Market power may be demonstrated through either of two types of proof: direct or circumstantial. *Atl. Richfield Co.*, 51 F.3d at 1434. "If the plaintiff puts forth evidence of restricted output and supracompetitive prices, that is direct proof of the injury to competition which a competitor with market power may inflict, and thus, of the actual exercise of market power." *Id.*; *see also FTC v. Indiana Fed'n of Dentists*, 476 U.S. 447, 460-61, 106 S. Ct. 2009, 90 L. Ed. 2d 445, (1986) ("proof of actual detrimental effects . . . can obviate the need for an inquiry into market power, which is but a surrogate for detrimental effects") (internal citation and quotation marks omitted). "The more common type of proof is circumstantial evidence pertaining to the structure of the market." *Atl. Richfield*, 51 F.3d at 1434. "To demonstrate market power circumstantially, a plaintiff must: (1) define the relevant market, (2) show that the defendant owns a dominant share of that market, and (3) show that there are significant barriers to entry and show that existing competitors lack the capacity to increase their output in the short run." *Id.*

**CIVIL MINUTES—GENERAL**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 14-5453 DMG (SSx) | | Date | April 21, 2015 |
|---|---|---|---|---|

| Title | *Signature MD, Inc. v. MDVIP, Inc.* | | Page | 10 of 14 |
|---|---|---|---|---|

### 1.    Anticompetitive Conduct

MDVIP contends that Signature MD fails to allege facts demonstrating "predatory or anti-competitive conduct aimed at accomplishing [monopoly power]." (Mot. at 6).[3] Signature MD has alleged, however, the existence of unenforceable non-compete clauses, sham litigation, and threats of legal action against doctors, even after the expiration of their contracts. (FAC ¶¶ 13, 108).

The bad faith prosecution of an objectively baseless claim may constitute an anti-trust violation. *Handgards, Inc. v. Ethicon, Inc.*, 601 F.2d 986 (9th Cir. 1979) (prosecution of patent enforcement actions in bad faith may violate antitrust laws); *see also Christianson v. Colt Indus. Operating Corp.*, 766 F. Supp. 670, 692 (C.D. Ill. 1991) (denying summary judgment on a claim under the Sherman Act where evidence suggested defendant had threatened legal action without factual support). A claim is objectively baseless when no reasonable litigant could realistically expect success on the merits. *Professional Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 60, 113 S. Ct. 1920, 123 L. Ed. 2d 611 (1993). Here, the alleged legal threats came after the expiration of the contracts, and therefore appear to have no objective merit. Further, as discussed below, the enforcement of these non-compete clauses is also objectively baseless, at least as to their enforcement in California, as California law expressly voids such contracts. *See* Cal. Bus & Prof Code § 16600. As such, Signature MD has adequately alleged anti-competitive conduct that may constitute a Sherman Act violation.

### 2.    Monopoly Power

Courts are generally wary of dismissing section 2 claims at the pleading stage for failure to specify market power beyond the relevant percentage. *Cost Mgmt. Servs. v. Wash. Natural Gas Co.*, 99 F.3d 937, 951 (9th Cir. 1996) ("[A]n allegation of a specific market share is sufficient, as a matter of pleading, to withstand a motion for dismissal.") (citing *Hunt-Wesson Foods, Inc. v. Ragu Foods, Inc.*, 627 F.2d 919 (9th Cir. 1980), *cert. denied*, 450 U.S. 921, 101 S. Ct. 1369, 67 L. Ed. 2d 348 (1981)); *see also Rebel Oil*, 51 F.3d at 1438 ("ARCO's market share of 44 percent is sufficient as a matter of law to support a finding of market power, if entry barriers are high and competitors are unable to expand their output in response to supracompetitive pricing.").

---

[3] Defendant cites to numerous cases involving "exclusive dealing" contracts, and their lack of anticompetitive effect. (Mot at 15-16). The contracts at issue, however, involve non-compete clauses and last for two years after the termination of the business relationship, and these cases are therefore not on all fours with the present case.

---

Case 2:14-cv-05453-DMG-SS   Document 65   Filed 04/21/15   Page 11 of 14   Page ID #:1491

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 14-5453 DMG (SSx) | Date | April 21, 2015 |
|---|---|---|---|

| Title | *Signature MD, Inc. v. MDVIP, Inc.* | Page | 11 of 14 |
|---|---|---|---|

As mentioned above, it is uncontested the MDVIP owns approximately 71% of the concierge market with exclusive physician contracts, and 86% of the overall patients enrolled in concierge medicine.  (FAC ¶¶ 61, 64.)  In Boston, MA, Nashville, TN, San Antonio, TX, and Savanna, GA, MDVIP owns 100% of the physician and patient concierge market.  (*Id*. ¶ 73.) Signature MD's allegations therefore plausibly demonstrate monopoly power, or at least the "dangerous probability of achieving monopoly power," sufficient to survive a motion to dismiss. *Atl. Richfield Co.*, 51 F.3d at 1433; *see Image Tech. Servs. v. Eastman Kodak Co.*, 125 F.3d 1195, 1206 (9th Cir. 1997) ("Courts generally require a 65% market share to establish a prima facie case of market power.") (citing *American Tobacco Co. v. United States,* 328 U.S. 781, 797, 90 L. Ed. 1575, 66 S. Ct. 1125 (1946)).

To the extent that MDVIP contends that Signature MD's monopoly allegations are facially flawed, this Court disagrees.  MDVIP argues that the objective growth of the market contradicts Signature MD's claim that "there are very few, if any, other Internists and Family Physicians who would be interested in and eligible to join the program of a competitor in any of these markets."  (Mot. at 5, 17-18; FAC ¶ 97).  First, this is a factual attack on the merits of Signature MD's allegations, rather than a challenge to the sufficiency of the pleadings.  Second, MDVIP misquotes Signature MD's FAC.  Signature MD states that due to the non-compete clauses in MDVIP's contracts, many of the physicians interested in concierge programs are *ineligible* to participate in competitor's programs.  (FAC ¶¶ 92-98.)  Signature MD's allegations are not about the overall size of the market, but rather the anti-competitive nature of the non-compete clauses and other contractual requirements.  *Id.*  Signature MD has sufficiently alleged MDVIP's monopoly power in the concierge market.

### 3.    Standing

MDVIP argues that Signature MD fails to allege how consumers are harmed by the alleged anti-competitive behavior, such as through increased prices or decreased total output. (Mot. at 9-10.)[4]  To the contrary, Signature MD has specifically alleged that MDVIP's intentional anticompetitive actions have increased patient prices and reduced the availability of alternative providers, and interfered with the patient-physician relationship.  (FAC ¶ 133.) MDVIP further contends that the FAC does not allege a specific instance where Signature MD was unable to recruit a physician due to the terms of the non-compete contract.  (Mot at 7.)  The FAC alleges, however, that due to the non-compete clauses in the majority of MDVIP's contracts, Signature MD has not been able to enter large, affluent, urban areas like Atlanta, Birmingham, Houston, and Las Vegas.  (FAC ¶¶ 103-104.)  This is adequate to establish

---

[4] To the extent MDVIP argues that the growth of Signature MD's competitor, Concierge Choice, contradicts any inference of increased prices, this is again an attack on the factual underpinnings of the pleadings rather than their legal sufficiency.  (*See* Mot at 9.)

**CIVIL MINUTES—GENERAL**                          Initials of Deputy Clerk <u>KT</u>

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 14-5453 DMG (SSx) | | Date | April 21, 2015 |
|---|---|---|---|---|

| Title | *Signature MD, Inc. v. MDVIP, Inc.* | | Page | 12 of 14 |
|---|---|---|---|---|

Signature MD's standing to bring Sherman Act claims. Signature MD has successfully alleged the required elements of a claim under Section 2 of the Sherman Act.

**D.    Cartwright Act**

The Cartwright Act "prohibits the combination of resources of two or more independent interests for the purpose of restraining commerce and preventing market competition." *G.H.I.I. v. MTS, Inc.*, 147 Cal. App. 3d 256, 266, 195 Cal. Rptr. 211, 217 (1983) (internal citation omitted). "The Cartwright Act was patterned after Section 1 of the Sherman Act, and the pleading requirements under the two statutes are similar." *Apple, Inc. v. Psystar Corp.*, 586 F. Supp. 2d 1190, 1203 (N.D. Cal. 2008). "[F]ederal cases interpreting the Sherman Act are applicable to problems arising under the Cartwright Act." *Marin Cnty. Bd. of Realtors, Inc. v. Palsson*, 16 Cal. 3d 920, 925, 549 P.2d 833, 835 (1976). "Typically, if a plaintiff can maintain a Sherman Act claim, he or she can maintain a similar Cartwright Act claim." *Tucker v. Apple Computer, Inc.*, 493 F. Supp. 2d 1090, 1102 (N.D. Cal. 2006).

For the reasons discussed above regarding the Sherman Act Section 1 claim, Signature MD has stated a claim for a violation of the Cartwright Act.

**E.    Unfair Competition Under Cal. Bus. & Prof. Code § 17200**

California's Unfair Competition Law ("UCL") prohibits any "unlawful, unfair or fraudulent business act or practice." *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel.* Co., 20 Cal. 4th 163, 180, 83 Cal. Rptr. 2d 548, 973 P.2d 527 (1999) (citing Cal. Bus. & Prof. Code § 17200 *et seq.*). "[The UCL] thereby 'borrows' violations from other laws by making them independently actionable as unfair competitive practices." *AT & T Mobility LLC v. AU Optronics Corp.*, 707 F.3d 1106, 1107 n. 1 (9th Cir. 2013). "Violations of federal statutes . . . may serve as the predicate for a UCL cause of action." *Rose v. Bank of Am., N.A.*, 57 Cal. 4th 390, 394, 304 P.3d 181, 183 (2013), *cert. denied*, 134 S. Ct. 2870, 189 L. Ed. 2d 832 (2014).

MDVIP contends that, because Signature MD's state law claims must be dismissed, as discussed above, there are no "unlawful" claims which would establish the "unlawful" prong of the UCL. (Mot. at 24.) As discussed above, Signature MD has adequately pled a cause of action under Section 2 of the Sherman Act. Signature MD's Section 2 claim therefore serves as a sufficient predicate for its UCL claim.

**F.    Covenants Not to Compete in Violation of Cal. Bus. & Prof. Code § 16600**

California law voids any contract "by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind." Cal. Bus. & Prof. Code § 16600. Under

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 14-5453 DMG (SSx) | | Date | April 21, 2015 |
|---|---|---|---|---|

| Title | *Signature MD, Inc. v. MDVIP, Inc.* | | Page | 13 of 14 |
|---|---|---|---|---|

Section 16600, "covenants not to compete are void, subject to several exceptions." *Edwards v. Arthur Andersen LLP*, 44 Cal. 4th 937, 945, 81 Cal. Rptr. 3d 282 (2008) (discussing exemptions for noncompetition agreements in the sale or dissolution of corporations, partnerships, and limited liability corporations). "[C]ourts have consistently affirmed that section 16600 evinces a settled legislative policy in favor of open competition and employee mobility." *Id.* (internal citation omitted). "The law protects Californians and ensures that every citizen shall retain the right to pursue any lawful employment and enterprise of their choice." *Id.* (internal citation and quotation marks omitted).

Rather than contest the illegality of the covenants not to compete under California law, MDVIP contends that: (1) Signature MD does not allege "a single incident or fact involving a MDVIP contract with a given California physician"; and (2) the contracts at issue specifically apply Florida law, which allows for the enforceability of non-compete clauses. (Mot. at 22-24.)

Signature MD has alleged that "MDVIP entered into, implemented, and enforced express agreements that are unlawful and void under Section 16600 of the California Business & Professions Code." (FAC ¶ 160.) Specifically, Signature MD has pled, that one of the areas covered by MDVIP's non-compete contracts is the State of California, including the Thousand Oaks, CA market. (*Id.* ¶¶ 73, 89, 162.) Signature MD has adequately pleaded a violation of Section 16600.

MDVIP asserts that its contracts contain a Florida choice-of-law provision, and that California law therefore does not apply.[5] Mot. at 23. These contracts are not yet before the Court as evidence. Even assuming the existence of the Florida choice-of-law provision, however, the FAC alleges that the contracts restrict doctors from engaging in their lawful profession *in California*. When a covenant not to compete contains a choice-of-law provision, well established California choice-of-law principles apply such that California will likely be found to have a materially greater interest in enforcing its strong public policy, as reflected in section 16600, of maintaining employment mobility. *See Application Grp. v. Hunter Grp.*, 61 Cal. App. 4th 881, 896-97, 899-902, 72 Cal. Rptr. 2d 73 (1998), citing *Nedlloyd Lines B.V. v. Superior Court*, 3 Cal. 4th 459, 464-66, 11 Cal. Rptr. 2d 330 (1992).

---

[5] MDVIP also argues due process does not allow this Court to invalidate contracts entered into wholly outside of California. (Mot. at 22-24.) It is clear from the face of the FAC, however, that Signature MD alleges only that contracts entered into, implemented, or enforced in California are void under California law. *See* FAC ¶ 162 ("Defendant entered into unlawful agreements and engaged in a conspiracy within the *State of California*") (emphasis added). MDVIP's due process argument is therefore unavailing.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 14-5453 DMG (SSx)** | Date | April 21, 2015 |
|---|---|---|---|

| Title | *Signature MD, Inc. v. MDVIP, Inc.* | Page | 14 of 14 |
|---|---|---|---|

**V.**
**CONCLUSION**

In light of the foregoing:

1.      The motion to dismiss is **DENIED**; and

2.      MDVIP shall file its Answer within 21 days after the date of this Order.

**IT IS SO ORDERED.**