BLECHER COLLINS & PEPPERMAN, P.C.
Maxwell M. Blecher (State Bar No. 26202)
 *mblecher@blechercollins.com*
Donald R. Pepperman (State Bar No. 109809)
 *dpepperman@blechercollins.com*
Courtney A. Palko (State Bar No. 233822)
 *cpalko@blechercollins.com*
515 South Figueroa Street, Suite 1750
Los Angeles, California 90071-3334
Telephone: (213) 622-4222
Facsimile: (213) 622-1656

Attorneys for Plaintiff
SIGNATURE MD, INC.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| SIGNATURE MD, INC.,<br><br>        Plaintiff,<br><br>    vs.<br><br>MDVIP, INC.,<br><br>        Defendant. | Case No. 2:14-CV-05453-DMG-SS<br><br>**PLAINTIFF SIGNATURE MD, INC.'S NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION**<br><br>**[Fed.R.Civ.P. 56(a); Local Rule 56-1]**<br><br>Date:    January 29, 2016<br>Time:    2:00 p.m.<br>Crtrm.: 7<br><br>The Hon. Dolly M. Gee<br><br>Amended Complaint Filed: 11/7/2014 |

## NOTICE OF MOTION AND MOTION

TO THIS COURT, ALL PARTIES, AND TO THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on Friday, January 29, 2016, at 2:00 p.m. in Courtroom 7 of the above-captioned court located at the United States Courthouse, 312 North Spring Street, Los Angeles, California 90012, or as soon thereafter as the parties may be heard by this Court, plaintiff Signature MD, Inc. ("SMD") will, and hereby does, move this Court for an Order granting relief in favor of plaintiff on its claim for violation of section 16600 of the Business & Professions Code (Fourth Cause of Action -- Dkt. No. 37 at 32) and section 17200 of the Business & Professions Code (Fifth Cause of Action -- Dkt. No. 37 at 32-34) and against defendant MDVIP, Inc. ("MDVIP").  This Motion is brought pursuant to Rule 56(a) of the Federal Rules of Civil Procedure and Local Civil Rule 56-1.

This Motion is made following an exchange of correspondence and emails between counsel explaining the basis and grounds for this Motion pursuant to Local Rule 7-3 which took place between August 12 and August 17, 2015.

Plaintiff SMD brings this Motion for Partial Summary Judgment requesting this Court, based on the undisputed evidence presented, to find as a matter of law, that defendant MDVIP's California Services Agreements, which contain post-termination and post-expiration express non-competition covenants and related restrictive "buy-out" provisions, violate the strict prohibitions of section 16600 of the Business & Professions Code and are consequently void and unenforceable. SMD further moves this Court to find, as a matter of law, that these unlawful contractual restrictions constitute predicate acts which also violate the "unlawful" and/or "unfair" prongs of section 17200 of the Business & Professions Code entitling SMD to injunctive relief pursuant to section 17203.

SMD's Motion is based on this Notice and the attached Memorandum of Points and Authorities and the concurrently filed plaintiff's Statement of

Uncontroverted Facts and Conclusions of Law; Declarations of Donald R. Pepperman, Esq.; Theodore P. Neher; Dr. Howard L. Worcester; and Matthew A. Jacobson.  The Motion is also based on the papers and pleadings on file herein, and on such additional evidence and arguments as may be presented at or before the hearing on this matter.

Dated:  December 28, 2015                    BLECHER COLLINS & PEPPERMAN, P.C.
                                             MAXWELL M. BLECHER
                                             DONALD R. PEPPERMAN
                                             COURTNEY A. PALKO


                                             By: _____/s/ *Donald R. Pepperman*_____
                                                     Donald R. Pepperman
                                                     Attorneys for Plaintiff
                                                     SIGNATURE MD, INC.

# TABLE OF CONTENTS

Page

I.   PRELIMINARY STATEMENT ................................................................. 1

II.  STATEMENT OF FACTS ...................................................................... 2

III. LEGAL STANDARDS APPLICABLE TO MOTION FOR
     SUMMARY JUDGMENT .................................................................... 6

IV.  LEGAL STANDARDS GOVERNING CONTRACT
     INTERPRETATION IN CALIFORNIA ............................................... 8

V.   CALIFORNIA LAW APPLIES TO MDVIP'S CALIFORNIA
     CONTRACTS ...................................................................................... 9

VI.  DEFENDANT MDVIP'S CONTRACTUAL PROVISIONS THAT
     RESTRICT OR PRECLUDE COMPETITION ARE VOID AND
     UNENFORCEABLE UNDER SECTION 16600 OF THE BUSINESS
     & PROFESSIONS CODE ................................................................... 10

VII. SECTION 16600 IS APPLICABLE TO PHYSICIANS AND
     INDEPENDENT CONTRACTORS .................................................... 11

VIII.LIQUIDATED DAMAGES OR PENALTY PROVISIONS IN A
     CONTRACT, LINKED TO, OR TANTAMOUNT TO A
     COVENANT NOT TO COMPETE, ARE VOID AND
     UNENFORCEABLE.............................................................................. 12

IX.  THE COURT CANNOT REWRITE AN UNLAWFUL COVENANT
     NOT TO COMPETE ........................................................................... 12

X.   AS A MATTER OF LAW, MDVIP'S PHYSICIAN MEMBERSHIP
     CONTRACTS IN CALIFORNIA ALSO VIOLATE SECTION 17200
     OF THE BUSINESS & PROFESSIONS CODE.................................. 13

XI.  PLAINTIFF SMD HAS THE REQUISITE STANDING TO SEEK
     INJUNCTIVE RELIEF ....................................................................... 14

XII. THE ENTRY OF INJUNCTIVE RELIEF IS WARRANTED TO
     REMEDY MDVIP'S VIOLATIONS OF THE UCL ................................ 16

XIII.CONCLUSION .................................................................................... 17

# TABLE OF AUTHORITIES

**Page(s)**

<u>CASES</u>

*Advanced Bionics Corp. v. Medtronic, Inc.*,
    29 Cal.4th 697 (2002) ..................................................................10

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986)......................................................................7

*AngioScore, Inc. v. TriReme Medical, LLC*,
    70 F.Supp.3d 951 (N.D. Cal. 2014)...........................................16

*Application Group., Inc. v. Hunter Group., Inc.*,
    61 Cal. App. 4th 881 (1998)....................................................9, 14

*Applied Materials, Inc. v. Advanced Micro-Fabrication*
    *Equip. (Shanghai) Co.*,
    630 F. Supp. 2d 1084 (N.D. Cal. 2009)......................................14

*Arkley v. Aon Risk Services Companies, Inc.*,
    Case No. CV12-1466, 2012 WL 2674980 (C.D. Cal. June 13, 2012) ............8, 14

*Armendariz v. Foundation Health Psychare Services, Inc.*,
    24 Cal.4th 83 (2000) ..................................................................10

*Armstrong v. Davis*,
    275 F.3d 849 (9th Cir. 2001) ......................................................15

*Atel Fin. Corp. v. Quaker Coal Co.*,
    321 F.3d 924 (9th Cir, 2003) ........................................................9

*Bias v. Moynihan*,
    508 F.3d 1212 (9th Cir. 2007) ......................................................7

*Blanks v. Seyfarth Shaw LLP*,
    171 Cal.App.4th 336 (2009) ........................................................14

*Bosley Med. Grp. v. Abramson*,
    161 Cal. App. 3d 284 (1984) ........................................................11

*Cedars-Sinai Medical Center v. Shewry*,
    137 Cal.App.4th 964 (2006) ..........................................................9

*Celotex v. Catrett*,
    477 U.S. 317 (1986).......................................................................6

*Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*,
    20 Cal.4th 163 (1999) .............................................................13, 14

*Chamberlain v. U.G. Augustine*,
    172 Cal. 285 (1916) ......................................................................12

*Cisneros v. U.D. Registry, Inc.*,
    39 Cal.App.4th 548 (1995) ..........................................................17

*Clayworth v. Pfizer, Inc.*,
    49 Cal. 4th 758 (2010) .............................................................15, 16

*Cortez v. Purolator Air Filtration Products Co.*,
    23 Cal. 4th 163 (2000) .................................................................17

*County of San Diego v. Ace Property & Casualty Ins. Co*,
    37 Cal. 4th 406 (2005) ...................................................................8

*D'sa v. Playhut, Inc.*
    85 Cal.App.4th 927 (2000) ..........................................................10

*Dowell v. Biosense Webster, Inc.*,
    179 Cal.App.4th 564 (2009) ......................................................8, 14

*Edison v. Reliable Ins. Co.*,
    664 F.2d 1130 (9th Cir. 1981) ........................................................8

*Edwards v. Arthur Andersen LLP*,
    47 Cal.Rptr.3d 788 (2006) ...........................................................11

*Edwards v. Arthur Andersen*,
   44 Cal. 4th 937 (2008) .................................................................................. 8

*Feitelberg v. Credit Suisse First Boston, LLC*,
   134 Cal.App.4th 997 (2006) ........................................................................ 16

*FTC v. Stefachnik*,
   559 F.3d 924 (9th Cir. 2009) ......................................................................... 7

*Gest v. Bradbury*,
   443 F.3d 1177 (9th Cir. 2006) ..................................................................... 15

*Golden v. California Emergency Physicians Medical Group*,
   782 F.3d 1083 (9th Cir. 2015) ..................................................................... 11

*Gordon Termite Control v. Terrones*,
   84 Cal. App. 3d 176 (1978) ......................................................................... 12

*Harbor Island Holdings v. Kim*,
   107 Cal.App.4th 790 (2003) ........................................................................ 12

*Harper v. Wallingford*,
   877 F.2d 728 (9th Cir. 1987) ......................................................................... 7

*Henderson v. Gruma Corp.*,
   Case No. Civ. 10 - 0417, 2011 WL 1362188 (C.D. Cal. April 11, 2011) ........... 16

*Hill Medical Corp. v. Wycoff*,
   86 Cal.App.4th 895 (2001) ............................................................. 10, 12, 13

*Howard v. Babcock*,
   6 Cal.4th 409 (1993) .................................................................................... 10

*In re Air Passenger Computer Reservations Systems Antitrust Litigation*,
   724 F.Supp. 744 (C.D. Cal. 1989) .................................................................. 9

*Ins. Service v. Paymaster Corp.*,
   962 F.2d 853 (9th Cir. 1992) ......................................................................... 8

*Kasky v. Nike, Inc.*,
   27 Cal.4th 939 (2002) .................................................................................. 13

*Keenan v. Allen*,
   91 F.3d 1275 (9th Cir. 1996) ......................................................................... 7

*Kelton v. Stravinski*,
   138 Cal.App.4th 941 (2006) ..................................................................... 8, 10

*KGB, Inc. v. Giannoulas*,
   104 Cal.App.3d 844 (1980) .......................................................................... 10

*Kolani v. Gluska*,
   64 Cal.App.4th 402 (1998) ....................................................................... 8, 13

*Korea Supply Co. v. Lockheed Martin Corp.*,
   29 Cal.4th 1134 (2003) ................................................................................ 17

*Latona v. Aetna U.S. Healthcare, Inc.*,
   82 F. Supp.2d 1089 (C.D. Cal. 1999) .......................................................... 15

*Law Offices of Matthew Higbee v. Expungement Assistance Services*,
   214 Cal.App.4th 544 (2013) .................................................................. 13, 15

*Loral Corp. v. Moyes*,
   174 Cal. App. 3d 268 (1985) ....................................................................... 12

*Matsushita Electric Indus. Co., Ltd. v. Zenith Radio Corp.*,
   475 U.S. 574 (1986) ....................................................................................... 7

*Metro Traffic Control, Inc. v. Shadow Traffic Network*,
   22 Cal.App.4th 853 (1994) .......................................................................... 10

*Muggil v. Reuben H. Donnelley Corp.*,
   62 Cal. 2d 239 (1965) .................................................................................. 12

*Nedlloyd Lines B.V. v. Superior Court*,
   3 Cal. 4th 459 (1992) ..................................................................................... 9

*Newport Beach Country Club v. Founding Members of the Newport Beach Country Club, Inc.*,
   109 Cal. App.4th 944 (2003) ......................................................................... 8

*People ex rel Lockyer v. Fremont Life Ins. Co.*,
   104 Cal.App.4th 508 (2002) ...................................................................... 13
*People v. JTH Tax, Inc.*,
   212 Cal.App.4th 1219 (2013) .................................................................... 13
*Pineda v. Bank of America, N.A.*,
   50 Cal.4th 1389 (2010) .............................................................................. 16
*Prata v. Superior Court*,
   91 Cal.4th 1128 (2001) .............................................................................. 14
*Progeny Ventures, Inc. v. Western Union Financial Services, Inc.*,
   752 F.Supp.2d 1127 (C.D. Cal. 2010) .................................................... 8, 9
*Ramirez v. Balboa Thrift and Loan*,
   215 Cal.App.4th 765 (2013) ...................................................................... 13
*Scott v. Snelling and Snelling, Inc.*,
   732 F.Supp. 1034 (N.D. Cal. 1990) ........................................................ 7, 9
*Shahinian v. Kimberly-Clark Corp.*,
   Case No. CV14-8390 (DMG (SHx),
   2015 WL 4264638 (C.D. Cal. July 10, 2015) .......................................... 16
*South Bay Radiology Medical Assocs. v. Asher*,
   220 Cal. App. 3d 1074 (1990) ................................................................... 11
*Strategix, Ltd. v. Infocrossing West, Inc.*,
   142 Cal.App.4th 1068 (2006) .................................................................... 13
*T.W. Electrical Services, Inc. v. Pacific Electric Contractors Ass'n.*,
   809 F.2d 626 (9th Cir. 1987) ...................................................................... 7
*Triton Energy Corp. v. Square D Co.*,
   68 F.3d 1216 (9th Cir. 1995) ...................................................................... 7
*United States v. Diebold Inc.*,
   369 U.S. 654 (1962) .................................................................................... 7
*Valley Forge Christian Coll. v. Ams. United for Separation of
   Church & State, Inc.*,
   454 U.S. 464 (1982) .................................................................................. 15
*Washington Mut. Ins., Inc. v. United States*,
   636 F.3d 1207 (9th Cir. 2011) .................................................................... 6
*White v. Trans Union, LLC*,
   462 F.Supp.2d 1079 (C.D. Cal. 2006) ...................................................... 16

<u>STATUTES</u>

Bus. & Prof. Code § 16600 ................................................................... passim
Bus. & Prof. Code § 16601 ........................................................................ 11
Bus. & Prof. Code § 17200 .................................................................. 13, 14
Bus. & Prof. Code § 17203 ........................................................................ 16

<u>RULES</u>

Fed.R.Civ.P. 56(a) ....................................................................................... 1
Fed.R.Civ.P. 56(c) ....................................................................................... 6
Fed.R.Civ.P. 56(e) ....................................................................................... 7

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

Plaintiff Signature MD, Inc. ("SMD") respectfully submits this Memorandum in support of its Motion for Partial Summary Judgment.

## I.   <u>PRELIMINARY STATEMENT</u>

Defendant MDVIP, Inc. ("MDVIP") has entered into a network of long-term written contracts with at least 72 concierge physicians across California. All of these California Services Agreements contain non-competition provisions which restrict the employment mobility of the bound MDVIP concierge physicians and preclude competitive concierge membership program vendors, such as plaintiff SMD, from contracting and doing business with this large segment of concierge physicians.

Plaintiff SMD brings this Motion for Partial Summary Judgment, pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, requesting this Court to grant relief in favor of SMD. Plaintiff urges this Court to find that defendant MDVIP's web of California Services Agreements, which contain post-termination (before end of contract term time period) and post-expiration (after natural expiration of contract) express non-competition covenants and related onerous contract "buy-out" provisions, on their face, violate the strict prohibitions of section 16600 of the Business & Professions Code and are hence void and unenforceable. Further, SMD requests that this Court find that these unlawful restrictions are predicate acts which also constitute violations of the "unlawful" and/or "unfair" prongs of section 17200 of the Business & Professions Code entitling plaintiff SMD to injunctive relief barring MDVIP from enforcing these illegal non-compete restrictions which impede competition.

Because the issues raised by this narrow and focused Motion are purely <u>legal</u>, and the Motion is based on an undisputed factual evidentiary record, this Court may properly grant relief in favor of plaintiff SMD on its claims under section 16600 (Fourth Cause of Action -- Dkt. No. 37 at 32) and section 17200 (Fifth Cause of

1   Action -- Dkt. No. 37 at 32–34) as a <u>matter</u> <u>of</u> <u>law</u>.  MDVIP's California Services

2   Agreements on their face violate these statutes which were designed and enacted to

3   promote, protect, and preserve competition, and no additional discovery is necessary

4   or warranted.  Moreover, since Section 16600 is in essence a strict liability statute,

5   the "reasonableness" of MDVIP's non-compete clauses is not at issue and does <u>not</u>

6   raise any fact issues.

7   **II.**     **STATEMENT OF FACTS**

8          Concierge medicine is a type of enhanced and personalized medical care that

9   is offered by physicians in the United States.  (SUF No. 3)[1]  MDVIP was formed in

10  2000 and is one of the first companies in the United States that offered a concierge

11  medicine membership program to physicians interested in transitioning their

12  practices to concierge medicine and that MDVIP offered a concierge medicine

13  network of physicians to patients interested in receiving enhanced and personalized

14  medical services.  (*Id*. No. 2.)  MDVIP operates the largest concierge medicine

15  membership program in the United States.  (*Id*. No. 5.)  MDVIP claims to be a

16  pioneer in the specialized business of concierge medicine.  (*Id*. No. 4)

17         MDVIP promotes and provides a certain services as part of its concierge

18  medicine membership program to physicians who desire to transition their existing

19  practices to concierge medical practices.  (SUF No. 7.)  MDVIP selects and

20  evaluates physicians to determine whether their practices are well-suited for

21  conversion to a membership-based practice and transitions a qualifying physician's

22  practice from a standard practice to a membership-based practice.  (*Id*. No. 6.)

23  MDVIP also agrees to provide services, among others, such as patient recruitment,

24  staff training and information technology to assist the affiliate physician in

25  establishing, implementing and operating a concierge medicine practice.  (*Id*. No. 8)

26  _____

[1] "SUF" refers to the numbered uncontroverted facts identified in "Plaintiff
27  Signature MD, Inc.'s Statement of Uncontroverted Facts and Conclusions of Law"
28  (filed concurrently herewith).

1    MDVIP has been successful in signing up physicians and patients to

2  participate in its concierge medicine program.  (SUF No. 9.)  MDVIP started its

3  business in 2000 and that as of May 2015 it had contracts with approximately 700

4  doctors and 240,000 member patients nationwide.  (*Id*. No. 14.)  MDVIP competes

5  in the United States with other providers of membership-based or concierge medical

6  services.  (*Id*. No. 10)

7    MDVIP requires that physicians who participate in its concierge medicine

8  program agree to limit their practices to no more than 600 MDVIP patient members.

9  (SUF No. 13.)  MDVIP markets its concierge medicine membership programs to

10  patients who pay a fee of $1,500 - $1,800 or more depending upon the location (and

11  the year in question) to join the program and to receive agreed upon services from

12  MDVIP affiliated concierge physicians.  (*Id*. No. 15.)  MDVIP receives a portion of

13  the annual fee paid by the patients who are members of its concierge medicine

14  program.  (*Id*. No. 16)

15    MDVIP also conducts business in California and has entered into contracts

16  with physicians in California to provide concierge medicine services to members of

17  MDVIP's concierge medicine program.  (SUF No. 11.)  In California, MDVIP's

18  contracts with its affiliated physicians are entitled "Services Agreement."  (*Id*. No.

19  17.)  MDVIP currently has approximately 72 affiliated concierge physicians under

20  contract in California.  (*Id*. No. 19.)

21    Since at least 2003 (prior to SMD's market entry), all of MDVIP's physician

22  contracts in California have contained a restrictive covenant entitled "Non-

23  Competition Covenant."  (SUF No. 18.)  This provision bars the MDVIP physician

24  from practicing concierge medicine within a ten (10) mile radius from the location

25  which the physician had been practicing or within ten (10) miles of any other of the

26  700 MDVIP physicians in the United States.  (*Id*. No. 23.)  In 2015, the contracts

27  were somewhat revised to read: "Physician agrees that at any time during the term

28  of this Agreement, during any renewal period and for a period of one (1) year if this

-3-

1   Agreement is terminated prior to its natural expiration," the MDVIP physician shall

2   not compete.  (*Id*. No. 25.)

3        The majority of MDVIP's Services Agreements with affiliated physicians in

4   California since 2009 contain a post-expiration (after end of contract) non-

5   competition covenant that applies for a period of one year after the expiration of the

6   contract.  (SUF No. 12.)  Since 2010, non-competition provision in the MDVIP

7   Services Agreement is applicable during the term of the Services Agreement, during

8   any renewal of the Services Agreement, and for one-year after the Agreement is

9   terminated for any reason.  (*Id*. No. 21.)  The term "compete" is defined in the

10  MDVIP California Services Agreement as including the rendering of services

11  substantially similar to those offered by MDVIP to its members and creating,

12  establishing or participating in any program substantially similar to MDVIP.  (*Id*.

13  No. 22)

14       From 2009 through 2014, all of MDVIP's concierge physician contracts in

15  California were 10 years in length (five year base period with a follow-on five year

16  "automatic renewal").  (SUF No. 20.)  There is also an evergreen one year

17  successive renewal provision (unless either party provides 60 days' notice to

18  terminate) which extends beyond the 10 year term period.  (*Id*. No. 24).  In 2015,

19  presumably in response to SMD's lawsuit, MDVIP reduced the term of its contracts

20  to a base period of 7 years with one year successive renewal time periods.  (*Id*. No.

21  20)

22       In or around 2009, MDVIP added a "buy-out" provision to its California

23  Services Agreements.  (SUF No. 27.)  This "buy-out" option provides that after the

24  initial five-year base period "in lieu of renewing the Agreement for an additional

25  five (5) year period" the MDVIP physician can terminate the contract if he/she pays

26  $500-$600 for each member patient multiplied by the number of years remaining in

27  the mandatory five year renewal period.  (*Id*. No. 28.)  Accordingly, in order for a

28  MDVIP doctor to terminate the 10-year contract he/she is required to pay MDVIP

1   (depending on the number of patients and years remaining on the contract)

2   approximately $1 million, or more.  (*Id*. No. 29.)  The "buy-out" provision in

3   MDVIP's Services Agreements with California affiliated physicians provides that if

4   a physician elects to do a "buy-out," the physician is not relieved from any other

5   obligations otherwise intended to survive termination of the contract, including the

6   non-competition covenant.  (*Id*. No. 30.)  Consequently, the covenant not to

7   compete (and other provisions) is still applicable even after a "buy-out."  (*Id*. No.

8   31.)  No MDVIP affiliate physician in California has ever invoked or exercised the

9   "buy-out" or liquidated damages provision in the MDVIP California Services

10  Agreement.  (*Id*. No. 32.)

11      SMD was formed in late 2006 and provides concierge medicine services.

12  (SUF No. 34.)  SMD competes with MDVIP by offering its own concierge

13  membership programs for physicians that includes management services and

14  assistance in opening and operating concierge medicine practices.  (*Id*. No. 37.)

15  Among the services SMD provides for physicians are evaluation of practices,

16  practice conversion and/or transition, and marketing for physicians who elect to

17  adopt a concierge model for their medical practices.  (*Id*. No. 35.)  SMD provides

18  some services similar to those provided by MDVIP and MDVIP and SMD compete

19  for many of the same physicians who are interested in providing concierge medicine

20  care and for patients nationwide who are interested in concierge medicine programs.

21  (*Id*. No. 36.)

22      In the first quarter of 2013, SMD entered into concierge medicine contracts

23  with Drs. Stephen Hryniewicki, Howard Worcester and Ronald Bitter who were

24  practicing in Long Beach, California.  (SUF No. 38.)  Drs. Hryniewicki, Worcester

25  and Bitter were formerly affiliated with MDVIP under five-year term contracts that

26  had expired.  (*Id*. No. 39.)  None of the five-year term contracts that MDVIP had

27  with Drs. Hryniewicki, Worcester and Bitter contained any post-expiration non-

28  compete clauses.  (*Id*. No. 40.)

1    MDVIP has filed lawsuits against its competitors, including SMD, Concierge
2    Choice, and Medley Health.  (SUF No. 41.)  In January 2013 it filed a lawsuit in
3    Palm Beach County, Florida against SMD and several then current SMD employees
4    who had previously been employed by MDVIP, asserting a variety of causes of
5    action, including theft of trade secret and several tortious interference claims in
6    addition to breach of contract claims.  (*Id*. No. 42.)  In MDVIP's Florida lawsuit,
7    MDVIP has conducted the depositions of California physicians Drs. Hryniewicki
8    and Worcester.  (*Id*. No. 43)

9    SMD claims that but for the existence of the non-compete provisions in
10   MDVIP's California contracts and the threat of further litigation by MDVIP, SMD
11   would have continued its solicitation of MDVIP affiliated physicians in California
12   and offered viable and competitive alternatives for those doctors and their patients.
13   (SUF No. 44.)  SMD further contends that MDVIP's non-compete contractual
14   restrictions have had a negative impact on the growth of SMD's market share,
15   revenues, and profits in California.  (*Id*. No. 45.)

16   Finally, MDVIP's contracts with its affiliated physicians state that MDVIP
17   maintains an independent contractor relationship with its affiliated physicians.
18   (SUF No. 33.)

19   **III.    LEGAL STANDARDS APPLICABLE TO MOTION FOR SUMMARY**
20   **JUDGMENT**

21   Summary judgment is proper "if the pleadings, depositions, answers to
22   interrogatories and admissions on file, together with affidavits, if any, show that
23   there is no genuine issue of material fact and that the moving party is entitled to
24   judgment as a matter of law."  Fed.R.Civ.P. 56(c).  The purpose of summary
25   judgment "is to isolate and dispose of factually unsupported claims or defenses."
26   *Celotex v. Catrett*, 477 U.S. 317, 323–24 (1986); *accord Washington Mut. Ins., Inc.*
27   *v. United States*, 636 F.3d 1207, 1216 (9th Cir. 2011).

28

A fact is material when, under the governing substantive law, it could affect the outcome of the case.  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).  A dispute about a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.* at 248.

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact for trial.  *Id.* at 248–49.  If the moving party meets its burden the burden, of production then shifts so that "the non-moving party must set forth, by affidavit or as otherwise provided by Rule 56, specific facts showing that there is a genuine issue for trial.'"  *T.W. Electrical Services, Inc. v. Pacific Electric Contractors Ass'n.*, 809 F.2d 626, 630 (9th Cir. 1987) (quoting Fed.R.Civ.P. 56(e)); *see also FTC v. Stefachnik*, 559 F.3d 924, 929 (9th Cir. 2009) (nonmoving party must present affirmative evidence); *Bias v. Moynihan*, 508 F.3d 1212, 1218 (9th Cir. 2007) (same).  The trial court must view the facts and draw inferences in the manner most favorable to the nonmoving party. *United States v. Diebold Inc.*, 369 U.S. 654, 655 (1962).

"Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment."  *T.W. Elect. Serv.*, 809 F.2d at 630; *Harper v. Wallingford*, 877 F.2d 728, 731 (9th Cir. 1987).  The trial court is not obligated "to scour the record in search of a genuine issue of triable fact."  *Keenan v. Allen*, 91 F.3d 1275, 1279 (9th Cir. 1996) (quotation and citation omitted).  "The mere existence of a scintilla of evidence in support of the nonmoving party's position is not sufficient."  *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995).  The nonmoving party cannot defeat summary judgment merely by demonstrating "that there is some metaphysical doubt as to the material facts."  *Matsushita Electric Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

"[A] determination of the legal effect of the plain language of a contract where the intention of the parties is not in dispute is a question of law well suited to a grant of summary judgment."  *Scott v. Snelling and Snelling, Inc.*, 732 F.Supp.

1034, 1037–38 (N.D. Cal. 1990); *see also Edison v. Reliable Ins. Co*., 664 F.2d 1130, 1131 (9th Cir. 1981).

Finally, summary judgment is appropriate, as here, to invalidate a covenant not to compete under sections 16600 and 17200 of the Business & Professions Code.  *See, e.g. Dowell v. Biosense Webster, Inc.*, 179 Cal.App.4th 564, 579 (2009) (appellate court affirmed summary adjudication in favor of plaintiff on claim that noncompete and nonsolicitation claims were unlawful under section 16600 of Business & Professions Code and also violated section 17200 as "unlawful" and "unfair" business practices); *Arkley v. Aon Risk Services Companies, Inc.*, Case No. CV12-1466, 2012 WL 2674980 at *4–5 (C.D. Cal. June 13, 2012) ("Plaintiffs are entitled to judgment as a matter of law" on claim that covenants not to compete are void and unenforceable under Bus. & Profs. Code sections 16600 and 17200); *Kelton v. Stravinski*, 138 Cal.App.4th 941, 946–49 (2006) (finding covenant not to compete invalid as a matter of law on summary judgment); *Edwards v. Arthur Andersen*, 44 Cal. 4th 937, 944, 948 (2008) (finding covenant not to compete invalid as a matter of law where trial court "took no evidence"); *see also Kolani v. Gluska*, 64 Cal.App.4th 402, 407 (1998) (finding covenant not to compete invalid as a matter of law on demurrer).

## IV.   LEGAL STANDARDS GOVERNING CONTRACT INTERPRETATION IN CALIFORNIA

"The fundamental goal of contract interpretation is to give effect to the mutual intentions of the parties, which is to be inferred, if possible solely from the written terms of the contract."  *Progeny Ventures, Inc. v. Western Union Financial Services, Inc.*, 752 F.Supp.2d 1127, 1132 (C.D. Cal. 2010); *see also County of San Diego v. Ace Property & Casualty Ins. Co*, 37 Cal. 4th 406, 415 (2005) (goal of contract interpretation is "to give effect to the mutual intent of the parties.") (quotation and citation omitted)); *United Commerc. Ins. Service v. Paymaster Corp*., 962 F.2d 853, 856 (9th Cir. 1992) (objective standard); *Newport Beach Country*

1  *Club v. Founding Members of the Newport Beach Country Club, Inc*., 109 Cal.

2  App.4th 944, 956 (2003) (it is the objective intent, evidenced by the words of the

3  contract, rather than the subjective intent of the parties, that controls interpretation).

4  If the language of the contract is clear and explicit, such language governs

5  interpretation.  *Progeny*, 752 F.Supp.2d at 1132.  The parties' undisclosed intent or

6  understanding of the contract "is irrelevant to contract interpretation." *Cedars-Sinai*

7  *Medical Center v. Shewry*, 137 Cal.App.4th 964, 980 (2006) (quotation and citation

8  omitted).  Defendant MDVIP is <u>not</u> contending that the non-compete provisions in

9  its California Services Agreements, which MDVIP drafted, are ambiguous or

10 unclear.

11     "Under California law, the interpretation of contract language is a question of

12 law." *Atel Fin. Corp. v. Quaker Coal Co.*, 321 F.3d 924, 925–26 (9th Cir, 2003);

13 *see also In re Air Passenger Computer Reservations Systems Antitrust Litigation*,

14 724 F.Supp. 744, 746 (C.D. Cal. 1989).

15 **V.    <u>CALIFORNIA LAW APPLIES TO MDVIP'S CALIFORNIA</u>**

16        **<u>CONTRACTS</u>**

17     MDVIP earlier unsuccessfully argued to this Court that section 16600 is

18 inapplicable to its California contracts because they all contain a Florida choice-of-

19 law provision.  (Dkt. No. 65 at 13.)  "California law will not give force to a choice

20 of law clause where the contract contains a provision which violates a 'strong public

21 policy' such as section 16600." *Scott,* 732 F.Supp. at 1039 (citation omitted); *see*

22 *also Application Group., Inc. v. Hunter Group., Inc.*, 61 Cal. App. 4th 881, 896–902

23 (1998); *Nedlloyd Lines B.V. v. Superior Court*, 3 Cal. 4th 459, 464–66 (1992).

24 Consequently, section 16600 is the <u>controlling</u> law with respect to the non-compete

25 and other restrictions in MDVIP's California Services Agreements.  Florida law is

26 wholly inapplicable and MDVIP's choice-of-law provision is unenforceable.

27

28

## VI. <u>DEFENDANT MDVIP'S CONTRACTUAL PROVISIONS THAT RESTRICT OR PRECLUDE COMPETITION ARE VOID AND UNENFORCEABLE UNDER SECTION 16600 OF THE BUSINESS & PROFESSIONS CODE</u>

"California has a settled policy in favor of open competition." *Howard v. Babcock*, 6 Cal.4th 409, 416 (1993) (citing Bus. & Prof. Code § 16600).  Section 16600 sets forth the general rule in California that covenants not to compete are void and unenforceable.  *Kelton*, 138 Cal.App.4th at 946; *Hill Medical Corp. v. Wycoff*, 86 Cal.App.4th 895, 901 (2001).  The statute protects competition, and ensures "that every [California] citizen shall retain the right to pursue any lawful employment and enterprise of their choice."  *Metro Traffic Control, Inc. v. Shadow Traffic Network*, 22 Cal.App.4th 853, 859 (1994); *see also Advanced Bionics Corp. v. Medtronic, Inc.*, 29 Cal.4th 697, 706 (2002) (California has a "strong public policy against noncompetition agreements"); *KGB, Inc. v. Giannoulas*, 104 Cal.App.3d 844, 848 (1980) ("This statute [16600] presents an absolute bar to postemployment restraints and represents a strong policy of this state."); *D'sa v. Playhut, Inc.* 85 Cal.App.4th 927, 933 (2000) ("[T]here exists a clear legislative declaration of public policy against covenants not to compete.").  Section 16600 preserves and protects "[t]he interests of the employee in his own mobility and betterment" which "are deemed paramount to the competitive business interests of the employers[.]"  *D'sa*, 85 Cal. App. 4th at 933.  The California Supreme Court has "called noncompetition agreements illegal."  *Advanced Bionics*, 29 Cal.4th at 706 (*citing Armendariz v. Foundation Health Psychcare Services, Inc.*, 24 Cal.4th 83, 123 n. 12 (2000)).

At least since 1872 when California enacted the Civil Code, California has prohibited any restraint on the practice of a profession, business or trade.  This strong and broad policy favoring open competition is embodied in section 16600 (formerly Civ. Code, sec. 1673) which provides that, subject to limited exceptions, "every contract by which anyone is restrained from engaging in a lawful profession,

-10-

1   trade or business of any kind is to that extent void."  *See Edwards v. Arthur*

2   *Andersen LLP*, 47 Cal.Rptr.3d 788, 794 (2006) *as modified* (Sept. 26, 2006).

3   The undisputed evidence shows that MDVIP's California Services

4   Agreements contain express non-compete provisions that restrict concierge

5   physicians from switching to a competitor, such as SMD.  MDVIP's explicit non-

6   compete clauses do <u>not</u> fall within any recognized <u>exception</u> to section 16600[2] and

7   "reasonableness" of a non-compete restriction is not a defense (*Bosley Med. Grp. v.*

8   *Abramson, 1*61 Cal. App. 3d 284, 288 (1984)), or create a fact issue.

9   **VII.   <u>SECTION 16600 IS APPLICABLE TO PHYSICIANS AND</u>**

10   **<u>INDEPENDENT CONTRACTORS</u>**

11   MDVIP may argue that since it maintains that its contracted doctors are

12   "independent contractors," and not "employees," section 16600 does not apply to its

13   contracts.  The law, however, is very clear that section 16600's absolute prohibition

14   on covenants not to compete applies with full force to "independent contractors" as

15   well as doctors and medical groups.  *See Bosley,* 161 Cal. App. 3d at 288–92

16   (agreement between independent contractor doctor and medical group that provided

17   doctor could not compete after leaving employment, was void); *Golden v.*

18   *California Emergency Physicians Medical Group,* 782 F.3d 1083, 1090–93 (9th Cir.

19   2015) (reversing and remanding issue of whether non-compete agreement with

20   emergency room doctor unlawful); *South Bay Radiology Medical Assocs. v. Asher,*

21   220 Cal. App. 3d 1074, 1083–84 (1990) (physicians).  Section 16600 applies to

22   MDVIP's California Services Agreements and renders their offensive provisions

23   void and unenforceable.

24

25

26

27   _____
     [2]  *See, e.g.* Bus. & Prof. Code § 16601 (exception for sale of goodwill of business).

28

VIII. <u>**LIQUIDATED DAMAGES OR PENALTY PROVISIONS IN A CONTRACT, LINKED TO, OR TANTAMOUNT TO A COVENANT NOT TO COMPETE, ARE VOID AND UNENFORCEABLE**</u>

At the threshold, the determination of whether a liquidated damages provision in a contract is valid or instead constitutes an unenforceable penalty presents a question of law. *Harbor Island Holdings v. Kim*, 107 Cal.App.4th 790, 794 (2003). Penalty, liquidated damages, and "buy-out" provisions in a contract which are tantamount to a covenant not to compete or a restraint on employee mobility are also void and unenforceable under section 16600. *See e.g. Chamberlain v. U.G. Augustine,* 172 Cal. 285, 288 (1916) (liquidated damages clause was "clearly a restraint of substantial character" that violated section 1673 (predecessor to section 16600)); *Loral Corp. v. Moyes,* 174 Cal. App. 3d 268, 276 (1985) (employment contracts which impose a "penalty" if employee works for a competitor after completion of employment are invalid); *Muggil v. Reuben H. Donnelley Corp.,* 62 Cal. 2d 239, 242–43 (1965) (forfeiture of employee's pension rights invalid under section 16600); *Gordon Termite Control v. Terrones,* 84 Cal. App. 3d 176, 179 (1978) ($50 per account penalty operated to unlawfully restrain employee from competing); *Hill,* 86 Cal. App. 4th at 901 (medical practice "buyout event" provision fell "squarely within the proscription of section 16600."). MDVIP's buy-out provisions, which require its concierge physicians to pay in excess of $1 million to extricate themselves from the long term contracts, but still binds them to the covenant not to compete, are excessive and violate section 16600.

IX. <u>**THE COURT CANNOT REWRITE AN UNLAWFUL COVENANT NOT TO COMPETE**</u>

"Section 16600 presently sets out the general rule in California--covenants not to compete are void." *Hill*, 86 Cal.App.4th at 901. To protect the integrity of this rule and policy, a trial court is <u>not</u> permitted to rewrite a void covenant (that has been challenged) in an effort to render it enforceable. *Id*. at 908. "To rewrite the

1   contract would undermine California public policy of open competition as

2   embedded in section 16600." *Id.*; *see also Kolani*, 64 Cal.App.4th at 407 ("The trial

3   court here properly concluded that it should not rewrite the broad covenant not to

4   compete"); *Strategix, Ltd. v. Infocrossing West, Inc.*, 142 Cal.App.4th 1068, 1074

5   (2006).  Therefore, the provisions in MDVIP'S California contracts that violate

6   section 16600 are void and unenforceable and should not, and cannot, be rewritten

7   to save them.

8   **X.     AS A MATTER OF LAW, MDVIP'S PHYSICIAN MEMBERSHIP**

9           **CONTRACTS IN CALIFORNIA ALSO VIOLATE SECTION 17200 OF**

10          **THE BUSINESS & PROFESSIONS CODE**

11          The UCL defines "unfair competition" to mean "any lawful, unfair or

12  fraudulent business act or practice."  Bus. & Prof. Code § 17200; *see also Ramirez*

13  *v. Balboa Thrift and Loan*, 215 Cal.App.4th 765, 777 (2013).  The UCL was written

14  in the disjunctive and broadly covers three varieties of unfair competition—acts that

15  are unlawful, unfair, *or* fraudulent.  *People v. JTH Tax, Inc.*, 212 Cal.App.4th 1219,

16  1236 (2013); *People ex rel Lockyer v. Fremont Life Ins. Co.*, 104 Cal.App.4th 508,

17  515 (2002).  The coverage of the UCL is "broad" and "sweeping" and the

18  Legislature intended the law "to permit tribunals to enjoin on-going wrongful

19  business conduct in whatever context such activity might occur."  *Cel-Tech*

20  *Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal.4th 163, 181 (1999).

21  Under the UCL, "a private plaintiff may bring a UCL action even when the 'conduct

22  alleged to constitute unfair competition violates a statute for the direct enforcement

23  of which there is no private right of action.'"  *Kasky v. Nike, Inc.*, 27 Cal.4th 939,

24  950 (2002) (citation omitted).  Indeed, courts have long recognized that a violation

25  of any federal, state, or local law can serve as a <u>predicate</u> <u>or</u> <u>basis</u> for a section

26  17200 action.  *Law Offices of Matthew Higbee v. Expungement Assistance Services*,

27  214 Cal.App.4th 544, 553 (2013).  The statute was framed to deal with the

28

1   innumerable "'new schemes which the fertility of man's invention would contrive.'"

2   *Cel-Tech,* 20 Cal.4th at 181 (citation omitted).

3        Section 17200 is a strict liability statute and is not required to show that the

4   defendant intended to injure anyone.  *Prata v. Superior Court*, 91 Cal.App.4th 1128,

5   1137 (2001) .  "An act may violate the UCL even if the unlawful practice affects

6   only one victim."  *Blanks v. Seyfarth Shaw LLP*, 171 Cal.App.4th 336, 364 (2009).

7        Numerous courts have found violation of section 17200 of the UCL

8   predicated on a violation of section 16600.  *See e.g. Dowell*, 179 Cal.App.4th at 575.

9   ("[I]t is clear that the noncompete and nonsolicitation clause in the agreements . . .

10  are void and unenforceable under section 16600 and that their use violates section

11  17200."); *Application Group*, 61 Cal.App.4th at 908 ("[T]rial court did not err in

12  finding [defendant's] use of a covenant not to compete in violation of section 16600

13  to be a violation of section 17200 as well."); *Arkley*, 2012 WL 2674980 at *5

14  (plaintiffs entitled to judgment as a matter of law because noncompete agreement

15  illegal and violative of UCL); *Applied Materials, Inc. v. Advanced Micro-*

16  *Fabrication Equip. (Shanghai) Co*., 630 F. Supp. 2d 1084, 1092 (N.D. Cal. 2009)

17  (unlawful clause under section 16600 also "constitutes unfair competition under

18  section 17200.").  Based on this undisputed evidentiary record, the Court may find

19  that the non-compete clauses and "buy-out" provisions in MDVIP's California

20  Services Agreements violate section 17200 of the UCL as "unfair" and/or

21  "unlawful" business practices.

22  **XI.   PLAINTIFF SMD HAS THE REQUISITE STANDING TO SEEK**

23        **INJUNCTIVE RELIEF**

24        Plaintiff SMD's undisputed evidence demonstrates that in the absence of

25  MDVIP's "non-competition covenants" (and other restrictions) in its California

26  Service Agreements, SMD would have contracted with one or more of MDVIP's

27  affiliated concierge physicians (as SMD did with Drs. Hryniewicki, Worcester, and

28  Bitter who did not have post-expiration non-compete restrictions).  Such new

1   contracts would have increased SMD's revenues, profits, and/or market share in

2   California.  (SUF No. 44-45.)  MDVIP's Agreements have contained these unlawful

3   "covenants" since at least 2003, up through the present, and many have remaining

4   time periods extending into the future before expiration.  By reason of the past and

5   continuing existence and enforcement by MDVIP of these non-compete clauses (by

6   litigation or otherwise), SMD has suffered and will continue to suffer injury in fact

7   to its business.  This evidence is more than sufficient to confer standing under

8   section 17204 of the Business & Professions Code for purposes of obtaining

9   injunctive relief.  *See e.g. Law Offices of Matthew Higbee*, 214 Cal. App. 4th at

10  556–61 (injuries to market share deemed sufficient for UCL standing); *Clayworth v.*

11  *Pfizer, Inc.*, 49 Cal. 4th 758, 790 (2010) (plaintiff need not prove eligibility for

12  restitution to have UCL standing to seek injunctive relief); *Latona v. Aetna U.S.*

13  *Healthcare, Inc.*, 82 F. Supp.2d 1089, 1096–97 (C.D. Cal. 1999) (employment

14  contracts that contain non-compete clauses have an "*in terrorem* effect" and

15  prospective future employers may be reluctant to hire employees bound by such

16  clauses "even if secure in the knowledge of the unenforceability" of such non-

17  compete clauses in California because "these employers may well wish to avoid  the

18  expense and energy of defending a lawsuit in which they are likely to be joined.").

19          This undisputed evidence is also more than adequate to satisfy the standing

20  requirements of Article III.  At a constitutional minimum, Article III standing

21  requires the plaintiff invoking jurisdiction to show it has "suffered some actual or

22  threatened injury as a result of the putatively illegal conduct of the defendant, and

23  that the injury be traced to the challenged action and is likely to be redressed by a

24  favorable decision."  *Valley Forge Christian Coll. v. Ams. United for Separation of*

25  *Church & State, Inc.*, 454 U.S. 464, 472 (1982) (quotations and citations omitted).

26  Where, as here, SMD is seeking injunctive relief it must only demonstrate that it is

27  "realistically threatened by a repetition of the violation."  *Gest v. Bradbury*, 443

28  F.3d 1177, 1181 (9th Cir. 2006) (quoting *Armstrong v. Davis,* 275 F.3d 849, 860–61

(9th Cir. 2001)).  Since it is beyond dispute that MDVIP's restraints on competition (the purpose of the non-competition covenants) has caused financial injury in fact to plaintiff SMD, to its direct competitor, by foreclosing its ability to contract with one or more MDVIP physicians, Article III standing is established.  *See e.g.*, *White v. Trans Union*, *LLC*, 462 F.Supp.2d 1079, 1084 (C.D. Cal. 2006); *Henderson v. Gruma Corp.*, Case No. Civ. 10 - 0417, 2011 WL 1362188, *7–8 (C.D. Cal. April 11, 2011); *AngioScore, Inc. v. TriReme Medical, LLC*, 70 F.Supp.3d 951, 962 (N.D. Cal. 2014) ("[a]n injury to market share suffered as a result of a competitor's unfair business practice is a cognizable injury under the UCL"); *Shahinian v. Kimberly-Clark Corp.*, Case No. CV14-8390 (DMG) (SHx), 2015 WL 4264638, *2–4 (C.D. Cal. July 10, 2015).

## XII.   THE ENTRY OF INJUNCTIVE RELIEF IS WARRANTED TO REMEDY MDVIP'S VIOLATIONS OF THE UCL

Business & Professions Code section 17203 creates the private right of action for violations of the UCL and provides the applicable remedies.  That section states: "The court may make such orders or judgments . . . as may be necessary to prevent the use or employment by any person of any practice which constitutes unfair competition . . . or as may be necessary to restore to any person in interest any money or property, real or personal, which may have been acquired by means of such unfair competition."  Bus. & Prof. Code § 17203.  Accordingly, under the language of the UCL, "a private plaintiff's remedies are generally limited to injunctive relief and restitution."  *Pineda v. Bank of America, N.A.*, 50 Cal.4th 1389, 1401 (2010) (quotations and citations omitted).  A plaintiff may seek an injunction under the UCL whether or not restitution is also available.  *Clayworth*, 49 Cal.4th at 789–90 ; *White*, 462 F.Supp. 2d at 1083–84.

"The UCL protects consumers as well as business competitors."  *Feitelberg v. Credit Suisse First Boston, LLC*, 134 Cal.App.4th 997, 1009 (2006).  "Section 17203 authorizes the court to fashion remedies to prevent, deter, and compensate for

1  unfair business practices." *Cortez v. Purolator Air Filtration Products Co.*, 23 Cal.

2  4th 163, 176 (2000).  A plaintiff may "combat unfair competition by seeking an

3  injunction against unfair business practices." *Korea Supply Co. v. Lockheed Martin*

4  *Corp.*, 29 Cal.4th 1134, 1152 (2003).  For more than 80 years, the UCL statute has

5  expressly provided for injunctive relief.  *Id*. at 1146.  However, the "injunctive

6  remedy should not be exercised 'in the absence of any evidence that the acts are

7  likely to be repeated in the future.'"  *Cisneros v. U.D. Registry, Inc.*, 39 Cal.App.4th

8  548, 574 (1995) (citation omitted).  Here, MDVIP's written California contracts

9  have remaining time periods that extend many years into the future (some up to 8-9

10 years).  Defendant MDVIP has not indicated any intent or plan not to continue to

11 enforce its illegal non-compete covenants and buy-out provisions.  Indeed, MDVIP

12 is still vigorously pursuing its Florida Lawsuit against SMD.  Consequently, the

13 Court should grant partial judgment and fashion appropriate injunctive relief to

14 enjoin MDVIP's unlawful practices.

15 **XIII.  <u>CONCLUSION</u>**

16       For the reasons set forth herein, and the undisputed evidentiary record

17 presented, plaintiff SMD respectfully submits that its Motion for Partial Summary

18 Judgment should be granted.

19

20 Dated:  December 28, 2015          BLECHER COLLINS & PEPPERMAN, P.C.

21                                   MAXWELL M. BLECHER

22                                   DONALD R. PEPPERMAN
                                     COURTNEY A. PALKO

23

24

25                          By:  _____/s/ *Donald R. Pepperman*_____

26                                   Donald R. Pepperman
                                     Attorneys for Plaintiff

27                                   SIGNATURE MD, INC.

28 80301.2